# Vol. 121.]   SEPTEMBER TERM, 1905.   637

Bay State 'Pet. Co., &c. v. Penn Lub. Co.—Backer, &c. v. Same.

Case 82.—ACTION BY PENN LUBRICATING CO. AGAINST GEORGE C. BACKER AND OTHERS, AND BY THE SAME PLAINTIFF AGAINST THE BAY STATE PETROLEUM CO. TO ENJOIN THEM FROM INTERFERING WITH ITS OPER-ATIONS IN BORING FOR OIL, &c.—June 15, 1905.

## Bay State Petroleum Co., &c. v. Penn Lubricating Co.. Backer, Co. v. Same.

Appeals from Wayne Circuit Court.

M. L. JARVIS Circuit Judge.

Judgment for plaintiff. Defendants appeal. Reversed.

Oil Leases—Failure to Develop Property—Abandonment—Estoppel.

1. Where an oil lease was for a specified time, or as long as oil was obtained in paying quantities, the lessee had the right to determine when he was no longer obtaining oil in a paying quantity.

2. Where an oil lease provided that work should be commenced within a certain time, and that failure on the part of the lessee to complete one well should render the lease void, and the lessee commenced work within the required time, but failed to find any oil, and no further work was done for several years, when work was resumed, owing to oil discoveries in the vicinity, the conduct of the lessee amounted to an abandonment.

3. Where the conduct of the lessee in an oil lease had been such as to amount to an abandonment, but, on re-entry by him, the lessor did not stand upon his objection, but acquiesced in the resumption of operations, such acquiescence estoppel the lessor to complain of the entry.

4. Where a lessee in an oil lease in effect abandoned the lease, but subsequently the lessor failed to stand by his objection to a re-entry, and acquiesced therein, and the lessee then abandoned the property, the acquiescence of the lessor did not estop him to deny the lessee's right to return a second time.

Bay State Pet. Co., &c. v. Penn Lub. Co.—Backer, &c. v. Same.

STONE & STONE for appellants.

JOSEPH BERTRAM and O. H. WADDLE for appellee.

(Briefs of attorneys on file with new case.)

Opinion by Chief Justice Hobson—Reversing.

On January 25, 1895, Harvey Duncan and wife executed the following lease to A. M. Williams: "Memorandum of agreement made January 25, 1895, by and between Harvey Duncan and wife, Mary, of the first part, and A. M. Williams, party of the second part. Consideration, mutual covenants and agreements herein contained. The first party has and does hereby grant to second party the exclusive right to operate for coal, oil, gas, salt, ores and all other minerals in three hundred acres, more or less, in precinct No. —, Wayne county, State of Kentucky, being the property whereon the said Duncan now resides. (Here follows description of property.)    Term of lease twenty years, or as long as oil, gas or any of the above substances are obtained in paying quantities.    Second party agrees to give first parties the full equal one-tenth part of the petroleum and minerals produced and saved on the above described premises.    And should gas be found in sufficient quantities to justify the parties of the second part in marketing same, the consideration in full to the parties of the first part, instead of one-tenth royalty, shall be $100 per annum for the gas from each well so long as it shall be sold therefrom from the the date hereof allowing said Williams one year and six months in which to begin work.    Said lease is given in consideration of the sum of one dollar in hand paid, the receipt of which is hereby acknowledged. Second parties to have the privilege of using sufficient water from the premises to run necessary engines,

and to remove all machinery and fixtures placed on the premises by them, with the right of ingress and egress, and exclusive right to lay and operate pipe lines to convey oil, gas and other substances. A failure on part of second party to complete one well, or make any payments as above provided, renders this lease null and void. All conditions herein to extend to heirs, administrators, executors and assigns of both parties." The lease was duly acknowledged and recorded in the office of the county clerk. Within eighteen months after the making of the lease, Williams put down a well on the tract something like 375 feet deep. At that time the oil field in Wayne county was little developed, and what oil had been found in this vicinity had been found in the Beaver Creek sand. When Williams passed through this sand and found nothing, he stopped boring, and nothing more was done under the lease by him. On February 1, 1897, he sold an undivided four-fifths interest in the lease to D. W. Wright & Co., who transferred it to Frank Haskell on February 3, 1900, and Haskell transferred it to appellee, the Penn Lubricating Company, on February 27, 1900. On July 22, 1900, Williams also transferred to it his remaining one-fifth interest in the lease. In the meantime oil had been found in Wayne county in what is known as the "Sunny Brook Sand," which is some 500 feet below the Beaver Creek sand. In June, 1902, appellee concluded to bore the well deeper into the Sunny Brook sand. Duncan said he had leased the land, and he objected, as they had not done anything on it for years, and had abandoned it. Appellee insisted upon going ahead, and Duncan made no further objection; the person to whom he had proposed to lease the land not closing the trade with him. Appellee put the well

640        KENTUCKY REPORTS.   [Vol. 121.

Bay State Pet. Co., &c. v. Penn Lub. Co.—Backer, &c. v. Same.

down some 500 feet deeper, and, getting nothing, after about six weeks tore down its derrick and moved everything it had off the land. It had leased something over 10,000 acres, and had found oil in other parts of its territory. Its purpose was to follow the line of the oil, and come back to Duncan's tract when it had learned where the line of oil ran. The evidence is somewhat conflicting on this point, and it is insisted for appellants that appellee intended then to abandon the lease, but we think the weight of the evidence shows otherwise. In October of that year Duncan went to Mr. Booth, the president of appellee, and asked him if he was going to pay rent or work the lease. He said that drilling the well deeper would hold the lease. Duncan replied that he was going to lease the land again if appellee did not work, and was assured that appellee was going to work the lease after a while. About this time, or a little after, oil was struck on land adjoining Duncan's tract. On November 11, 1902, Duncan leased part of the land to George C. Backer. On December 20th he leased the remainder of the land to C .W. Locklin. They agreed to give him a royalty of one-tenth and also paid him $550 in money, but they had full notice at the time of the prior lease. Locklin assigned his interest to the appellant, the Bay State Petroleum Company. In April, 1903, appellee went upon the land, and began building a derrick on a part of the tract north of where the old well was, and near the line of the tract on which oil had been struck. Appellant's men at night tore down the work which had beeen done on the derrick, and threw it in the creek. Thereupon appellee filed suits against Duncan, the Bay State Petroleum Company, and George C. Backer to enjoin them from interfering in its operations on the

land. The defendants filed answer and counterclaim, insisting that Williams had not complied with the terms of the lease and had abandoned it, and that nothing passed to appellee under the assignment to it; also that appellee had abandoned the lease after it found no oil in 1902. Proof was taken by the parties, which showed the facts above stated, and, the court having adjudged appellee the relief sought, the defendants appeal.

The first question necessary to be considered is whether Williams lost his rights in the lease by abandonment. It will be observed that, by the terms of the lease, Duncan granted to Williams the exclusive right to operate for oil and other minerals in the land for twenty years, or as long as oil or other minerals were obtained in paying quantities. Duncan to receive one-tenth of the oil and mineral produced. Williams was allowed one year and six months in which to begin work, and, on a failure on his part to complete one well, the lease was void. Duncan was paid no rent on his land. He got nothing but his royalty. There are therefore necessarily some implied conditions not expressed in the lease. To illustrate: Williams could not, after beginning work in eighteen months, wait until the nineteenth year of his lease before completing the well, but was required not only to begin work, but to prosecute it with reasonable diligence after it was begun. If he found oil, he could not plug up the well and draw off the oil from wells on adjoining land, thus sapping Duncan's property and cheating him of any royalty, but was required to use the well in a reasonable manner. His lease was for twenty years, or as long as oil or other minerals were obtained in paying quantities. He had the right to determine when he was no longer obtaining

vol. 121—41

oil or other minerals in paying quantities, and, if he so determined, he might abandon the lease. An abandonment by him of the lease need not be proclaimed by word or mouth, but may be inferred from his conduct. In Berry v. Frisbie (120 Ky., 337), 86 S. W., 558, 27 Ky. Law Rep., 727, when we had before us one of these oil leases, we said: ''The deliberateness of entering into written engagements of itself implies a purpose to become bound by the making of an enforcible agreement, unless the very terms of the paper repel the idea. The purpose of these contracting parties must have been the finding of oil or gas in paying quantities on this land, if to be found, and their being worked so as to make money for each party. That was the point where their minds met. The owner of the soil could not have dreamed that he was putting it out of his power to ever develop the mineral possibilities of his farm, nor, if minerals were found, that it would be left to the exclusive discretion of the other party whether they would be brought into marketable condition.'' Then, after referring to authorities holding that it would contravene the nature and spirit of such leases to allow the lessee to continue to hold his term a considerable length of time without making any effort at all to utilize the property, as this would deprive the lessor of his royalty, and of all opportunity to work the property himself or permit others to do so, the court concluded: ''Our construction of this contract is: that, when accepted, as it was within four months of its date, it bound the lessees to, within two years from such acceptance, explore the land described, by actually sinking a well or wells upon it. If oil or gas or coal were found therein in paying quantities, then the lessees were bound to diligently work and operate same, so as to

bring the product to a present market, and so as to promptly yield to the lessor his royalty: that unless the lessees did so actually develop the land in question, and in good faith and diligence operate it, the lease should be deemed abandoned." In Steelsmith v, Gartlan, 29 S. E., 978, 44 L. R. A., 107, where, as here, a dry well had been put down, the Court of Appeals of West Virginia said: "This unsuccessful search and abandonment in this case applies to the first well—the only one the lessee stipulated to put down unless gas and oil were found in paying quantities. He could not, as he himself maintains, be compelled to put down another well; and, he not being bound, the lessor was not bound either, for the only consideration left to her was the respective oil royalties and gas rentals, which the lessee was in position to entirely defeat. Contracts unperformed, optional as to one of the parties, are optional as to both." A number of authorities are collected in these opinions. See, also Thornton on Oil & Gas, secs. 137-141, and cases cited.

When Williams bored the well and found no oil he was at liberty to continue the search; but he was required, if he desired to continue the search, to continue it with reasonable diligence. He could not abandon the premises, and wait years for other developments to inform him whether it would pay to put down other wells on the property. The contract contemplates continuous operation under the lease. If he had found oil in his well, and had operated the well for five years, and it had then failed, he could not have left the property, and come back after five years and put down other wells. When he bored a dry well he was just in the same situation as he would have been if he had found oil, and the well had after-

wards gone dry. Duncan was to get a royalty, and only a royalty. The recited consideration of $1 adds nothing to the lease. The royalty reserved to Duncan would be valueless unless the operations under the lease were continuous. We therefore conclude that Williams abandoned the lease, and that in 1902, when appellee entered for the purpose of boring the well deeper it had no rights under it.

The other question to be determined is, what was the effect of appellee's re-entry and work on the well? While Duncan objected to this entry, we think that it follows from the proof that he did not stand upon his objection, but acquiesced in appellee's boring the well deeper. This acquiescence on his part would estop him to complain of the entry of appellee, or to say, if it had then found oil, that it was not entitled to the rights conferred by the contract. But when appellee again abandoned the property, he was not estopped to deny it the right to return a second time. In other words, the estoppel only cut him off from complaining of what appellee was then doing. It conferred on appellee no right to leave the premises, and come back at its pleasure to renew its operations. When appellee, after making the second experiment, took away its property and left the premises, the parties were just where they were before the entry was made. Duncan did not induce it to come upon his premises, or to spend any money there. It came of its own volition and against his protest, with full knowledge of all the facts. It was in no way misled, and when, after making its experiment, it left the property, taking everything it had there away, and there is no principle of estoppel upon which Duncan would be required to submit to any further entry by it, or to wait upon it before leasing the land to others.

Judgment reversed and cause remanded, with directions to the circuit court to dismiss appellee's petition.