## Jenkins v. Williams, et al.

(Decided March 25, 1921.)

### Appeal from Allen Circuit Court.

1. Mines and Minerals—Renewal of Lease by Widow of Landowner.—The widow of the landowner who leased his lands for oil and gas has no right or power by accepting rentals or otherwise to renew the lease contract after the death of her husband and after the lease has expired by its terms.

2. Mines and Minerals—Expiration of Lease—Payment of Rentals.—A payment of rentals on an oil lease to the executrix of deceased landowner after the lease contract has become forfeited by its terms will not renew the lease, nor will such payment made to the widow, she being the owner of the life estate only, give force or effect to the lease contract which has theretofore lapsed.

GILLIAM & GILLIAM for appllant.

NOEL F. HARPER and LORENZO K. WOOD for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

On the 19th day of February, 1916, Jas. T. Gibson and wife Elizabeth Gibson executed and delivered to Rupert Huntsman an oil and gas lease on a tract of land in Allen county containing 114 acres, which lease was to run for five years unless sooner terminated in one of the ways provided therein. Shortly after the execution of the lease Huntsman assigned it to appellant, Henry S. Jen-

kins, of New York. On the first day of June following, Gibson, the grantor, died leaving a will by which he devised the land leased to his wife Elizabeth Gibson for life with remainder to his children, appellees, Pearl Williams, et al. The widow was named and qualified as executrix of her husband's will.

The lease contract contained the following clauses: "The party of the second part agrees to drill a well on said premises within six months from the date hereof." This six months expired August 19, 1916. No well was drilled or even commenced on the premises within that time. In the event no well was drilled within six months the lease provided that the lessee should "pay at the rate of twenty-five cents per acre per year for every additional year such is delayed from the time above mentioned for the drilling of such well until a well is commenced." No rentals were paid or offered within the year following the six months drilling period nor until several months later.

About November 1st, 1917, the agent of appellant Jenkins hunted up Mrs. Gibson, the widow and executrix, and paid her as executrix $57.00 as rental on the lease for two years and took from her as executrix of Jas. T. Gibson a receipt for said sum. This receipt had been prepared by appellant Jenkins or his attorney before his agent went to see Mrs. Gibson on November 1, 1917, and bore a false date, August 18, 1917, the day before the expiration of the lease, by its terms. Although the receipt is dated August 18, 1917, it was not seen nor signed by Mrs. Gibson as executrix or otherwise until about November 1, 1919. At that time she did not live on the land.

By reason of the payment of the rentals to the executrix, the acceptance thereof by her as executrix, and as appellant contends as joint obligee in the lease, appellant Jenkins was claiming the right to enter upon the land and take the oil and gas therefrom at the time this action was commenced April 11, 1919, by the children of Gibson to have the lease declared void under the forfeiture clause therein contained.

The chancellor directed a cancellation of the lease, from which decree Jenkins appeals. In asking for a reversal of the judgment the appellant makes the following three arguments:

(1) The acceptance of rentals by Mrs. Elizabeth D. Gibson, who was not merely the life tenant, but was also a joint obligee, to continue the lease in force from August 19, 1918, constituted a waiver of any ground of forfeiture by reason of payment out of time. The payment to a joint lessor is a good and sufficient payment to all of the lessors.

(2) The payment to Mrs. Gibson was a sufficient payment, although paid out of time, because at the inception of the life tenancy the lease was a valid, subsisting lease contract and Mrs. Gibson being both by operation of law and by virtue of the last will and testament of her husband entitled to the rents, profits and income from the entire body of the estate.

(3) The appellees estopped themselves from claiming forfeiture of the lease by their ratification of the acts of the appellants in standing by and seeing appellants expend substantial amounts of money in the operation on the leased premises, and at places pointed out to them by appellees or by their agents and representatives, and by delaying an unreasonable time after having knowledge of the acceptance of the rentals by their mother to institute proceedings to obtain relief and not having done so until conditions materially changed and gave them an opportunity to materially benefit themselves by their inactivity and laches.''

Mrs. Gibson owned and claimed no interest in the land at the time of the making of the lease in question except a potential right of dower. The legal title to the land leased was in the husband, James T. Gibson, and the wife joined in the lease for no other purpose than to bind her dower or life interest. She could not then have made a binding oil lease on the property, nor could she have done so at the time she received the money as rentals on November 1, 1917, after the death of her husband, the owner.

The mere fact that she was named as one of the grantors to conclude her potential right of dower did not in any way increase her interest in the property or invest her with any power she did not possess with reference to the property before the execution of the lease. Nor is her attitude with respect to the lands or the oil lease altered in the slightest by the employment of the term ''obligee,'' as argued by appellant's counsel, for we apprehend that one can not do by indirection what he is

powerless to do directly; and as Mrs. Gibson could not alone execute a valid lease on the lands in question at the time the lease is dated, or at the time she received the rentals in November, 1917, she could not do an equally important thing by reviving and energizing the lease which had lapsed. An obligee, as defined by Black, is one in favor of whom some obligation is contracted, whether such obligation be to pay money or to do or not to do something. To say that one can not execute a valid lease upon land but can vitalize and bring into entire force and effect a lease which is dead, upon the same property, is to admit that one can do by indirection that which he is powerless to do directly, and to assign to the word "obligee" wonder working power.

When the lessee entered into the lease contract he agreed that if a well was not being drilled within six months from its date, or the rentals provided for in the lease paid, "this lease becomes null and void and needs no further surrender." As to the lessee this was an absolute condition, which put an end to the lease contract which he was powerless to revive.

We are not overlooking the rule that a payment made to one, of two or more joint obligees, is a payment to all, unless a different intention is manifested by the instrument under which the payment is made, or by the payor or payee in the making of the same. Morrow's Heirs v. Starks' Admr., 4 J. J. Mar. 367; 30 Cyc. 1183. But this rule is one governing payments and does not relate in any measure to the law of real property. If one of two obligees should contend that no payment had been made, while the obligor was able to show that full satisfaction had been made to the other obligee, the law would impute payment to both obligees under the rule that payment to one of several joint obligees is a payment to all of them; but it would not extract title to real property from the complaining obligee.

So far as the lessee was concerned the lease contract was absolutely void—a lifeless thing—on November 1, 1917, when the past due rentals were paid to the widow as executrix, but would have been only voidable as to the grantor, James T. Gibson, had he been living. His heirs and devisees took the legal title to the land and had the right to treat the lease as void.

As the lease by its terms became "null and void and needs no further surrender" on the failure of the lessee

to begin a well within six months or pay rentals within a year thereafter, the failure of the lessee worked an absolute annullment of the entire lease contract to him as effectually as if he had voluntarily surrendered the lease, for this in effect is what he did, and it follows that the widow did not, either as executrix, life tenant or doweress, have power to revive the void contract by any act whatsoever of hers much less by merely receiving past due rentals.

Although the lease was made in February, 1916, and drilling was to begin in six months, no drilling was ever actually commenced for more than four years, and the rentals which were to be paid yearly were not paid until long after the entire year and a half had expired from the date of the lease. If drilling had commenced in good faith on the premises within six months from the date of the lease, or had the small rental reserved been paid within eighteen months from its date, the lease would have continued in force, but a failure on the part of the lessee to keep and perform these conditions—the terms of the lease—*ipso facto* voided the lease contract, and the lessee had no more right on the premises than if no lease had been made to him by Gibson. Up to this time only the nominal sum of one dollar had been paid by the lessee to Gibson. For this the lessee obtained one and one-half years to begin operations and failed so to do.

Ordinarily the law does not favor forfeitures, but owing to the peculiar nature of oil leases the law holds to the construction most favorable to the lessor and will work a forfeiture of the lease if so provided in the contract, for a failure to comply with the terms of the lease providing for speedy development. Thornton on Oil and Gas, 233; Edwards v. Iola Oil Gas Co., 65 Kan. 362; American Window Glass Co. v. Williams, 30 Ind. 685; Thornton on Oil & Gas, third edition, p. 1162, Brown v. Vandergrift, 80 Pa. 142; Logansport, etc., Gas Co. v. Null, 36 Ind. App. 503; Munroe v. Armstrong, 96 307; Praxton Oil Co. v. Meyers, 39 Ind. App. 695; Archer on Oil and Gas, p. 6; Monarch Oil, Gas and Coal Co. v. Richardson, 124 Ky. 607.

After stating the foregoing principle the text in 18 R. C. L. 1214, reads:

"The object of this rule is to promote development and prevent delay and unproductiveness, and this is regarded as the real intent of the lessor, even if there is no

express clause of forfeiture. For the reasons stated the courts are generally inclined to favor the forfeiture of leases of this character for the breach thereof by failure to develop or pay the compensation agreed upon for delay and to permit the lessor to enforce such forfeiture by a bill in equity, for the purpose or by repossessing the land where he is out of possession, or by releasing it to another. Provisions for forfeiture are for the benefit of the lessor and it has frequently been held that the lessee will not be permitted to plead his own default or wrong in discharge of his obligation to drill and pay rental. His default merely gives the lessor an option to declare the lease void for that reason, and does not relieve the lessee from liability.''

The same text on page 1216, section 117, says:

''Under the rule that the landlord does not release possession to the lessee pending development of the land, it is clear that no judicial proceeding is necessary to avoid an oil and gas lease for failure to comply with the conditions precedent by boring a well, where the lease merely gives the right to sell oil and gas with the privilege of operating therefor on the land. Neither is it necessary that the landlord make a formal re-entry, in order to take advantage of the breach of a forfeiture clause inserted in the lease for his benefit. His election to forfeit while he is in actual possession is a constructive entry under his title.''

It may, therefore, be stated as a general rule that the law looks with favor on forfeitures of oil and gas leases where development has failed, and equity will decree a forfeiture or cancellation where the term providing for a forfeiture if development of the lease is delayed, is relied upon and urged.

It can not be argued that the rentals were paid to the widow, Mrs. Gibson, as a joint obligee, for the appellant did not and could not have so considered her at the time the payment was made. The receipt taken from her for the money plainly negatives this. The money was paid to her as executrix of her husband, James T. Gibson, and so states, and not to her in her individual capacity, or as joint obligee. This receipt was carefully prepared by the lessee before going to see Mrs. Gibson to obtain her signature and make the payment, showing plainly that appellant knew of the death of Gibson, the landowner, the appointment of the widow as executrix, and that she

did not own or claim any interest in the land on which the lease had been granted, save and except a dower or life estate. He also admits that he knew the lease had expired by its terms, all through his negligence to perform the obligations he assumed. It is also clearly apparent from the evidence that the widow, an old lady, was wholly incapacitated for business because she was sick and almost deaf, and unable to understand the nature and character of the transaction. For these reasons she did not know that the lease made by her husband had expired many months before, nor in fact anything about the lease. With the record manifesting these facts, is there any reason in law or morals why a recalcitrant lessee who violates the entire spirit and purpose of the lease should be allowed additional time in which to bring about development?

The clause in the lease contract which reads: "The above rentals shall be paid to the parties of the first part in person or by check to their order, deposited in the post office by registered letter to their address in Scottsville, Ky., or deposited by mail to their credit to the First National Bank of Scottsville, Ky.," only created an agency between the husband and wife and the husband and the bank for the reception of the rentals for the use and benefit of James T. Gibson, the lessor and owner of the land. The death of Gibson destroyed the agency as it does in every case, and Mrs. Gibson therefore had no right to receive the rentals as the agent of Gibson. While it is true that Mrs. Gibson is made a joint obligee, she being only the holder of an inchoate right of dower in the lands, was not entitled to receive any of the rents except for the use and benefit of her husband, James T. Gibson, and as his agent. When the agency ceased, as it did on the death of Gibson, her right to collect or receive the rents ceased, and as this agency ceased long before the payment of the rentals to her as executrix, such payment did not have the effect of breathing life into the dead lease.

There is no merit in the contention of appellant that appellees are estopped by their conduct to claim a forfeiture of the lease, for the evidence does not sustain appellant's contention that appellees acquiesced in the work done by him in the development of the oil property.

We are of the opinion that the judgment of the lower court cancelling the lease should be and is affirmed.

DISSENTING OPINION BY JUDGE CLAY.

I find myself unable to concur in the majority opinion because, in my judgment, it does not give proper effect to the well established rule that payment to one of two joint obligees discharges the obligation. The facts are these: James T. Gibson was the owner of the land, and Elizabeth Gibson was his wife. The lease was executed by them as "parties of the first part," and the rentals were payable to the "parties of the first part." The lease contained a forfeiture clause in case the lessees failed to develop or to pay rent. No well was drilled on the premises within the time fixed, nor was the rent paid on the day it was due. Before the forfeiture became available, Gibson died, leaving a will by which he devised all of his estate to his wife for life, or during her widowhood, with remainder to his children. Some time after the due date the rent was paid to Elizabeth Gibson. Following her signature on the receipt which she gave were the words, "Executrix by will recorded Allen county Ky. the late James T. Gibson, deceased." The majority opinion holds that Mrs. Gibson had no authority to accept the past due rent after the death of her husband, and thereby prevent the forfeiture. I have found no case upholding this doctrine, but have found two well adjudged cases that announce a contrary rule. In Allen v. South Penn Oil Co., 72 W. Va. 155, Mary N. Allen, the owner in fee of a tract of land, and her husband executed a deed by which they conveyed to the South Penn Oil Company all the oil and gas in said tract. The consideration was $100.00 in cash and $500.00 to be paid either ninety days after a well was drilled, or fifteen years from the date of the deed if no well was drilled; and if the $500.00 was not paid, the grantee's estate was to be forfeited. The grantee was given the option either to pay the $500.00 at any time before the fifteen years expired and thereby prevent a forfeiture, or to decline to pay it even after a well was drilled and thereby forfeit the estate. In February, 1907, and within fifteen years from the date of the deed, the grantee drilled a well which produced gas, and within ninety days thereafter paid to Edgar Allen, husband of Mary N. Allen, $500.00, Mary N. Allen being then deceased and no administrator having qualified to administer on her estate. In a suit by the children of Mary N. Allen to enjoin further drilling, and for an accounting, it was contended by plaintiffs that the South Penn Oil

Company had forfeited its estate by failing to pay the $500.00 to their mother. In denying the contention of plaintiffs the court said:

"But the fact is that the money was paid to Edgar Allen, the husband, within ninety days after the well was drilled and within fifteen years after the date of the lease. Mary N. Allen was then dead, and no administrator had qualified to administer on her estate. That might have been a good excuse for not paying, if no one else had been entitled to receive the money. But the $500.00 was unpaid purchase money for land conveyed by the husband and wife jointly; it was payable, by the terms of the deed, to the "grantor." That constituted Mary N. Allen and her husband joint obligees. Morrison v. Coal & Coke Co., 52 W. Va. 331. And it is a well settled rule that payment to one only of several joint obligees discharges the debt. 22 A. & E. E. L. (2nd ed.) 524, and numerous cases cited under note 4; 30 Cyc. 1183, and cases under note 24."

In the case of Jens-Marie Oil Co. v. Rixse, et al. (Okla.), 178 Pac. 658, the lease was executed by J. A. Rixse, the owner of the land, and Minnie Rixse, his wife, "as parties of the first part as the interest of the lessors may appear," and provided that the lease should become null and void upon a failure to pay the rentals within ten days after the same became due. There was a payment due the first day of October, 1915, but it was not made until the 16th day of October, and then to Minnie Rixse. The rentals were payable "to the parties of the first part," and there was nothing in the lease defining the interest of the parties, or refuting the presumption that it was a joint interest. In holding that the payment to Minnie Rixse after the due date prevented the forfeiture, the court said:

"In the case of Allen v. So. Penn Oil Co., *supra,* the wife was the owner of the fee, and was joined by her husband in a conveyance to the oil and gas company. After the wife's death payment was made to the husband. The heirs of the mother brought suit to declare forfeiture for a failure to make the payment to the mother. The husband and wife were held to be joint obligees, and the payment to the husband discharged the obligation. It was said:

"But the $500.00 was unpaid purchase money for land conveyed by the husband and wife jointly; it was pay-

able, by the terms of the deed, to the 'grantor.' That constituted Mary N. Allen and her husband joint obligees. . . . And it is a well-settled rule that payment to one only of several joint obligees discharges the debt.''

In that case the payment was made within the time specified, and for that reason counsel endeavor to distinguish this case.

The obligee is none the less a joint obligee after the due date, and to say that Minnie Rixse had a right to accept the rentals on the day they were due, but had no right to accept them thereafter, is equivalent to saying that she was not a joint obligee and had no enforceable right under the contract. Certainly no cause of action would arise to either obligee until there was a default, and if her rights ceased when there was default, then she could not join in an action to recover the rentals or to enforce the lease. That would be to say that she never, at any time, had any right under the lease. Our attention has not been called to any authority supporting the proposition that the wife ceased to be a joint obligee on the day the payment was due.''

Thus it will be seen that the first case establishes the proposition that the authority of one of two joint obligees does not end with the death of the other, even though the latter be the owner of the land out of which the obligation grows, while the second case establishes the proposition that the authority of a joint obligee continues after the due date. Of course, the rule, that payment to one of two joint obligees discharges the obligation, is not based on the doctrine of agency, but grows out of the fact that the obligation is payable to two persons jointly. Hence, Mrs. Gibson was not a mere agent appointed by her husband to receive the money, and her authority was not revoked by his death. Being a joint obligee, Mrs. Gibson had the same authority as her husband. Clearly, if James T. Gibson had survived, his acceptance of the rent, after it became due and after the death of his wife, would have prevented the forfeiture. On what ground, then, can it be said that Mrs. Gibson's acceptance of the rent, after her husband's death and after it became due, would not have the same effect? It can not be doubted that, if during her husband's lifetime she had accepted the rent after it became due, such acceptance would have discharged the obligation and prevented the forfeiture.

And since her husband's death in no wise affected her relation or authority as joint obligee, it necessarily follows that her acceptance of the rent, after it became due and after her husband's death, likewise discharged the obligation and prevented a forfeiture. In reply to the argument that she could not bind the remaindermen, it is sufficient to say that the lease made Mrs. Gibson a joint obligee, with all the authority incident to that relation, and the title which the remaindermen took under their father's will was subject to all the terms of the lease, including the right of the lessees to pay the rent to Mrs. Gibson and the right of Mrs. Gibson to accept the rent and waive the forfeiture.

I do not regard as material the fact that Mrs. Gibson signed the receipt for the rent as executrix of her husband. In the first place, appellees contend that these words were not on the receipt when it was signed, but be that as it may, I doubt not that when money is paid to a person authorized to receive it in his individual capacity, the payment is good, although the receipt for the money is given in a representative capacity.

There being no plea of fraud on the part of appellant's agent, or of mental incapacity on the part of Mrs. Gibson, I have refrained from discussing that portion of the opinion stating that she was unable to understand the nature and character of the transaction.

For the reasons given I am of the opinion that the lower court erred in adjudging a cancellation of the lease, and that the judgment should be reversed with directions to dismiss the petition.