## No. 14,512.

### Hoff *v.* Girdler Corporation.

(88 P. [2d] 100.)

Decided March 6, 1939.

Mr. JOSEPH W. HAWLEY, for plaintiff in error.

Mr. FRANK H. HALL, for defendant in error.

*En Banc.*

MR. JUSTICE KNOUS delivered the opinion of the court.

THIS is an action to quiet title originally instituted against various parties, known and unknown, in which judgment was rendered in favor of plaintiff in error, the owner of the oil, gas and mineral rights in forty acres of land in Las Animas county, as against all of the defendants, except the Girdler Corporation, defendant in error, herein called the lessee, in which the title to a certain gas lease on the property held by it was quieted. Plaintiff in error, to whom we shall refer as the lessor, assigns error to the latter adjudication in the judgment. The question for determination is whether this lease has been abandoned by the lessee company because of its failure to produce gas from the well on said property since August 1, 1930.

The term of the lease in question was for five years from and after March 23, 1929, "and as long thereafter as oil or gas or either of them is produced from the said land by the lessee." It is conceded that before the primary term of the lease expired the predecessors of the lessee company drilled a well on the leased land; dis-

covered therein helium gas in commercial quantities; constructed a pipe line from the helium field to its plant located at Thatcher, Colorado; continued to produce helium gas from the well on the property here involved, and paid royalties thereon up to August 1, 1930. In these operations upon this land and adjacent territory, and in the erection of the plant, pipe line and booster station, the lessees in good faith expended nearly $500,000 to obtain and continue the production of helium gas. The well on the leased premises was in production at full capacity from January 1, 1930, to August 1, 1930. At the time the plant was erected and the wells drilled there was a market for the helium gas produced, the principal customer being the United States government, with which the predecessor of the lessee had a contract to fill the requirements of the Navy Department for helium gas. This contract with the United States was terminated in the spring of 1930 by a ruling of the Comptroller General requiring the Navy Department to purchase helium gas only through the United States Bureau of Mines from a plant just completed by the government at Amarillo, Texas. The lessee was unsuccessful in procuring a rescission or modification of the order of the Comptroller General and commercial production in the field ceased on August 1, 1930. Thereafter the United States government, by virtue of an existing act of Congress, denied applications of the lessee for permits to export the gas to France and Germany where there was an active market. The act of Congress entitled: "An Act authorizing the conservation, production and exploitation of helium gas," etc., approved March 3, 1925, under which the export permits were denied, was in force and its terms known to the parties at the time the lease here involved was executed. It is undisputed that since the cessation of production there has been no commercial market whatsoever for helium gas at any price and that the lack of such market is the sole and only reason for the cessation of production.

The evidence also disclosed that since August 1, 1930, the company, by research and intensive sales efforts has attempted to create a domestic market for helium gas but except for the sale of small quantities of gas for experimental purposes from another field, has been unsuccessful in this endeavor. During the interim the lessee has kept up and maintained its pipe lines, plant and facilities in good condition, to the end that immediate production can be resumed in the event a market for helium gas is available.

It also is conceded that there has been, and is, no drainage of the gas underlying the leased premises by other wells in the vicinity. The evidence adduced indicates that recently the United States has had under consideration some plan for acquiring control of known helium fields and each party asserts that the other, by the position taken in this litigation, is seeking to take advantage of this possible turn in events to his or its financial advantage. The lease does not contain a forfeiture clause but this omission is immaterial in a case where abandonment is charged. *Smith v. Root,* 66 W. Va. 633, 66 S. E. 1005, 30 L. R. A. (N. S.) 176. An abandonment rests upon the intention of the lessee to relinquish the premises, while a forfeiture is an enforced release which may be unintentionally or unavoidably committed by the lessee with no design to relinquish his lease. 1 Thornton's Law of Oil and Gas (4th ed.) §155. Abandonment consists of two factors, the intention and the act. 1 C. J. S., p. 8, §3a. The question of an intent to abandon is one of fact. The burden of showing abandonment is upon the party who relies thereon, and he must establish it by clear, unequivocal and decisive evidence. 1 Thornton's Law of Oil and Gas (4th ed.) §155; 1 Am. Jur. 12, §17; 1 R. C. L. 7; *Hall v. Roberts* (Tex. Civ. App.), 228 S. W. 1008. When, as here, a producing gas well has been developed within the primary term of the lease but the product is not marketed, that fact alone does not authorize the lessor to declare an aban-

donment of the lease unless the failure to market has been continued for an unreasonably long period of time. 18 R. C. L., p. 1216, §116.

■ ■ There is no suggestion in the evidence that at any time the lessee by express declaration has manifested any intention to abandon the premises. The intention to abandon, however, may be established by circumstantial evidence and the period of nonproduction here disclosed, if unexplained, might be sufficient to raise a presumption of abandonment. The resolution of the question before us, therefore, rests upon the determination of whether under the facts in this case the company's failure to produce gas has been delayed for an unreasonably long period of time. Many cases involving the question of abandonment under oil and gas leases after production has been developed, are cited by the parties. An examination of these authorities discloses that while all of the courts have generally adhered to the rules hereinabove stated, the disposition of each case has rested upon the specific facts arising in that proceeding. Ordinarily, in addition to the lapse of time, the factors considered by the courts in arriving at a decision, were the removal of machinery or casing from the wells, the apparent total or partial exhaustion of the field, the availability of pipe lines and refinery facilities, and the possibility of the drainage of the leased premises by active wells on adjacent lands. None of the latter elements is involved in the present case. The circumstances here seem to be unique since no case portraying even an approximately similar situation has been called to our attention. If any underlying principle can be said to be common to the factual consideration of cases involving abandonment, it is to the effect that the abandonment must be accomplished by the voluntary act of the lessee, decisive of a relinquishment of the right to be abandoned and inconsistent with future ownership or control thereof. 1 C. J. S., p. 9, §3 b (1). Here, as has been pointed out, the undisputed evidence shows that the

conditions which forced a cessation of operations were created by events beyond the control of the lessee and entirely involuntary as to it. The testimony presents no circumstance from which an intent to relinquish the lease can be implied; on the contrary, evidence of lessee's unbroken control of the leased premises and the maintenance intact of its machinery and facilities, discloses a course of conduct inconsistent with an intent to abandon. It also would appear that had the company continued to produce helium after the market therefor had vanished, of necessity the gas would have to be retained in artificial storage without advantage to lessor or lessee, whereas, as the matter stands, the supply merely has remained in natural storage under the leased premises. Since it is conceded that during the period of cessation no market for the gas has been available, in no event could the lessor have profited by production. As the lessor is the owner only of the mineral rights, no question of the use of the surface rights or interference with operations thereon by the lessee's occupancy of the premises arises. Under these circumstances, in the light of the applicable legal principles, we are not disposed to disturb the findings of the trial court determining that no abandonment of the lease has transpired. The lessor designated this action as one to quiet title and, in so far as we are advised, as against the other defendants below in reality it had that import, but as it pertains to the defendant in error here, must be viewed more in the nature of a suit to cancel the lease upon the grounds alleged. The judgment entered, in so far as it presently quiets title to the lease of the premises in the defendant in error, should not have the effect of conclusively establishing this status in perpetuity, but must be considered as being without prejudice to later consideration if future developments warrant, and it should so recite.

Judgment affirmed and cause remanded with directions to amend as indicated.

MR. JUSTICE BOCK dissents.