# Walter et al. v. Ashland Oil & Refining Co. et al.

March 20, 1945.

Woodward, Dawson, Hobson & Fulton, J. Ivan Cole, J. D. Ruark, Hubert Meredith, and Ernest H. Fulton for appellants.

E. L. McDonald, Harris & Drury, and King & Fluornoy for appellees.

Caldwell & Gray, for Ben Williamson, Jr., Trustee of Inland Gas Corporation, amicus curiae.

OPINION OF THE COURT BY JUDGE HARRIS—Affirming.

The appellants and the appellees are the owners, respectively, of conflicting oil and gas leases which were executed by A. V. Buckman and wife and on a 35-acre tract of land in Union county. The appellees' lease, which we shall speak of as the ''Basin'' lease, bears date October 3, 1941, was for a primary term of five years, and was recorded in the office of the clerk of Union county on September 19, 1942. It is what is known in the parlance of oil and gas men, and by the legal profession, as an ''unless'' lease. Those portions of it which are material to the present inquiry are in the following language, all of which is printed except the words that are italicized, which were written in with pen and ink:

'' * * * 3rd. To commence a drilling well on said land within one year from date as above written in this agreement, or this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender the lessor, or to the lessor's credit in the *Farmers* Bank at *Uniontown, Kentucky,* or its successor, which shall continue as the depositor regardless of changes in the ownership of said land, the sum of $1.00 per acre, per year, payable *annually* which shall operate as a rental and cover the privilege of deferring the commencement of a well for *one year.* In like manner and upon like payment or tenders the commencement of a well may be further deferred for like period of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privileges granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period aforesaid, and any and all other rights conferred.

''Should the first well drilled on above described

land be a dry hole, then in that event, if a second well is not commenced on said land within twelve months from the expiration of the last rental period which rental has been paid, this lease shall terminate as to both parties, unless the lessee on or before the expiration of said twelve months shall resume the payment of rentals in the same amount and in the same manner as hereinafter provided. And it is agreed that upon the resumption of payment of rentals, as above provided by the last preceding paragraph hereof, governing the payment of rentals and the effect thereof, shall continue in force just as though there had been no interruption in the rental payments. * * *

*"If no well is commenced within 60 days from the date of this lease by the Basin Drilling Company then this lease shall terminate as to both parties."*

The appellees not having commenced a well, although they had paid the '42-3 & '43-4 rentals, the Buckmans, on March 16, 1944, executed a similar lease to the appellants on the same property. On learning of the execution of this lease, which will be referred to as the "Walter" lease, the appellees instituted the present action under 639a—1 et seq. of the Civil Code for a declaration of rights and for all proper relief. Upon final submission the chancellor adjudged that the Basin lease was in full force and effect when the Buckmans attempted to execute the Walter lease, and that by reason thereof the appellants took no right to or interest in the oil and gas underlying the property in question. The judgment also enjoined the appellants from interfering with the appellees in the latters' efforts to develop the property.

It is appellants' position that the "write in" supersedes all that precedes it and admits of only one construction by the court or by the parties; namely, that the appellees' failure to commence a well within 60 days rendered the lease void and that the Statute of Frauds, KRS 371.010, precluded its waiver, extension or reviver by parole agreement or by the subsequent payment and acceptance of rentals.

One weakness in this position lies in its failure to recognize the distinction which this court has always made between oil and gas leases and other types of agreements affecting real estate—a distinction which has been recognized and approved by the legislature

and which is emphasized in the present instance by the circumstance that of all the Kentucky cases cited by the appellants not one of them holds that the termination clause of an oil and gas lease may not be mutually construed by the parties as merely rendering the lease voidable, or that the parties may not avoid its terminating effect by the payment and acceptance of past due rentals. True, there are Kentucky cases, as cited by appellants, in which we have said that the lease terminated or became void upon the lessee's failure to commence a well or to pay rental within the time prescribed; but in each of such instances the lessor was declining to join the lessee in a different construction, or to accept the past due rentals, or to consent to a waiver. So far as we are aware, in every instance in which the lessee has accepted the past due rental, or in which he has suffered the lessee to drill after the time had expired within which the lessee was required to drill, we have accepted the construction adopted by the parties and applied the rules of waiver and estoppel. Among the cases which recognize this well settled policy are those of Bay State Petroleum Co. et al. v. Penn Lubricating Co., 121 Ky. 637, 87 S. W. 1102; Cadillac Oil & Gas Co. v. Harrison et al., 196 Ky. 290, 244 S. W. 669; Jenkins v. Williams et al., 191 Ky. 165, 229 S. W. 94.

In the Bay State Petroleum Company case the lease provided that work should commence within a certain time and that failure on the part of the lessee to complete one well should render the lease void. The lessee commenced work within the required time, but failing to find any oil he ceased operations. After the lapse of some years he returned and over mild protests of the lessor resumed operations, but again his efforts were unsuccessful and he again abandoned drilling. It was when he returned for the third time that the question of the effect of his failure to complete a well within the time prescribed by the lease was presented to the court. In disposing of the question thus presented we said [121 Ky. 637, 87 S. W. 1104]: "The other question to be determined is, what was the effect of appellee's reentry and work on the well? While Duncan objected to this entry, we think that it follows from the proof that he did not stand upon his objection, but acquiesced in appellee's boring the well deeper. This acquiescence on his part would estop him to complain of the entry of

appellee, or to say, if it had then found oil, that it was not entitled to the rights conferred by the contract. * * *'' In the Cadillac Oil & Gas Company case, which involved a lease which contained a provision to the effect that it should become null and void if a well were not completed within six months unless the lessee paid a $1500 rental on or before the expiration of that period of time, we said [196 Ky. 290, 244 S. W. 670]: ''Passing this contention, we think the evidence sufficiently shows that appellees were estopped to claim a forfeiture of the lease by their acquiescence in the development of their lands by appellant. Let it be granted that the lease had expired before appellant entered on appellees' lands for the purpose of drilling wells and developing the property according to the terms of the lease, yet it cannot be denied that if such entry was made by appellant in good faith for development purposes, believing that appellees would not claim a forfeiture under the terms of the lease, and appellees knew of the entry, and either by silent acquiescence or by affirmative acts allowed or aided appellant in the sinking of the wells and development of the property for oil purposes at great expense, appellees will not now be heard to say that they did not consent to the development work by appellant, nor will they be allowed to claim or have a forfeiture of the lease, because to do so would be contrary to the fundamental principles of equitable estoppel. * * *'' In the Jenkins v. Williams case the lease provided that if the lessee did not drill within six months he should pay a rental of twenty-five cents an acre for every additional year such drilling was delayed. After the lessor had died, and after the lease had terminated because of the lessee's failure to drill or to pay the rentals, the lessee made rental payment to the widow of the deceased lessor, who was also the executrix of his estate. In passing upon the question presented by those facts we held that the lease contract had been forfeited and was void and could not be revived by the payment of rentals to the widow and executrix, but in doing so we were careful to recognize and to reaffirm the rule that such forfeiture clauses in an oil and gas lease are voidable at the election of the lessor. We said [191 Ky. 165, 229 S. W. 96]: ''So far as the lessee was concerned, the lease contract was absolutely void—a lifeless thing—on November 1, 1917, when the rentals were paid to the widow as ex-

ecutrix, but would have been only voidable as to the grantor, James T. Gibson, had he been living. His heirs and devisees took the legal title to the land and had the right to treat the lease as void.'' In that case the widow had joined her husband in the execution of the lease and his will gave her all of his property for life. Under those facts Judge Clay was so firmly of the opinion that even her acceptance of the past due rentals had the effect of avoiding the forfeiture provisions of the lease that he wrote a dissenting opinion, from which we quote the following: ''Hence Mrs. Gibson was not a mere agent appointed by her husband to receive the money, and her authority was not revoked by his death. Being a joint obligee, Mrs. Gibson had the same authority as her husband. Clearly, if James T. Gibson had survived, his acceptance of the rent, after it became due and after the death of his wife, would have prevented the forfeiture. On what ground, then, can it be said that Mrs. Gibson's acceptance of the rent, after her husband's death and after it became due, would not have the same effect? It cannot be doubted that, if during her husband's lifetime she had accepted the rent after it became due, such acceptance would have discharged the obligation and prevented the forfeiture. And since her husband's death in no wise affected her relation or authority as joint obligee, it necessarily follows that her acceptance of the rent, after it became due and after her husband's death, likewise discharged the obligation and prevented a forfeiture. * * *'' That this court has had respectable company in its tenacious adherence to this rule is verified by a reference to the various text writers who have written upon the subject, and to the decisions rendered in many of the other jurisdictions. In Thornton-Willis Oil and Gas, Vol. 2, sec. 267, the author cites West Virginia, Pennsylvania, Arkansas, New Jersey, Indiana, Oklahoma, Louisiana, Texas, Ohio and Kansas cases in support of the following statement: ''If a mining lease provide that if the mine should not be worked the lease should be void, the word 'void' means 'voidable' at the election of the lessor; and it will be necessary for him to do some act evincing an intention to avoid it before it can be considered avoided or terminated. This is true even though a clause provides that a failure to do the thing covenanted to do 'shall render this lease null and void, together with all rights

and claims, and not binding on either party and not to be revived without the consent of both parties hereto in writing.'" Amer. Jur., Vol. 24, page 582, sec. 72, under the title "Oil and Gas," expresses the general rule: "It is clear, of course, that a forfeiture provision is for the benefit of the lessor alone. He may exercise it if he pleases, or, if he prefers, he may waive it and seek enforcement of the terms of the contract. On the other hand it is well settled that he may by his course of conduct estop himself from invoking the benefit of a forfeiture clause." In support of the statement, citation is made to Arkansas, Indiana, Kentucky, Ohio, Oklahoma and Pennsylvania cases, as well as to various volumes of L. R. A. and their annotations.

In making the observation that this long and well-established rule of construction had received legislative recognition and approval, we had in mind Chapter 24 of the Acts of 1920, which was carried into the Statute as sections 3766b-4 and 3766b-4a, now KRS 353.020. With respect to these statutory provisions, it is asserted and argued on behalf of the appellants that 3766b-4 applies only to "or" leases, and that 3766b-4a applies equally to both "or" and "unless" leases, and that when the 3766b-4a provision that the terms of the lease shall be construed as written is applied, this court is obliged to hold that the instant lease terminated 60 days after its execution.

It probably is true, as suggested by counsel, that this action on the part of the legislature was prompted by the rule which this court originated in Monarch Oil, Gas & Coal Company v. Richardson, 124 Ky. 602, 99 S. W. 668, wherein we said that the lessor in an "or" lease could require the lessee to drill or to forfeit his lease in spite of the latter's right under the plain provision of the lease to delay drilling by the payment of rental. But for the reasons which will be assigned as we proceed, it is our view that section 3766b-4 applies not only to "unless" leases, but to "or" leases as well. It is our further view that while 3766b-4a applies to both "or" leases and "unless" leases, yet such applicability is a limited one, as we shall presently demonstrate.

Consider first 3766b-4. It reads:

"Failure to pay rentals.—Whenever, in any lease of lands for oil and gas purposes, it is provided in sub-

stance that actual drilling or development may be postponed by the payment or tender of rentals on or before the date fixed in said lease for such payment or tender, if the lessee or assignee of said lessee shall fail to pay or tender said rents on or before the date stipulated in the lease, or contract to pay, then said lease or contract shall be void, unless the lessor thereafter, and before executing a new lease or contract, shall accept said rentals.''

The legislature was well aware of the difference in phraseology between an ''or'' lease and an ''unless'' lease, and if it had intended that section of the Act to relate to ''unless'' leases only or to ''or'' leases only, it would have been a very natural and a very simple thing for it to say so specifically. Its failure to do that, coupled with the language which it used, admits of only one view; namely, that it was the legislature's intention that that section should relate to any oil and gas lease which provided in substance that drilling might be postponed by the payment of rental. An ''or'' lease, with its provision that the lessee shall drill within a certain time or pay rental, clearly constitutes a lease in which it is provided in substance that actual drilling may be postponed by the payment of rentals. The language employed does not admit of any other meaning or construction. And an ''unless'' lease, with its provision that if a well is not drilled within a certain time the lease shall terminate unless rentals are paid, likewise constitutes a lease in which it is provided in substance that actual drilling may be postponed by the payment of rentals.

In support of their argument that an ''unless'' lease must be construed as written, and that when so construed it becomes null and void if the lessee fails to drill and also fails to pay the rental, the appellants rely upon the second section of the Act (3766b-4a), which reads:

''Construction of existing leases.—That all valid existing or future contracts and leases for oil and gas rights upon and under the lands of this Commonwealth, wherein by their terms a rental clause is provided in event of failure to drill for oil or gas within a given period, are hereby validated and declared to be, and shall be, construed by the courts of this Commonwealth enforcible and binding contracts according to the terms

thereof between the parties so long as the rentals therein provided shall be paid or tendered at and as provided by their terms during the period of said lease and contract.''

As suggested above, the legislature was superseding the rule which the court had originated in the Monarch Oil, Gas & Coal Company case. To put it another way, the legislature was saying to the court: ''If a lease provides in substance that the lessee may drill or pay rental and that so long as he pays rental the lease shall not forfeit, you must not construe the lease as giving the lessor the right to refuse rental and declare the lease terminated.'' And since each type of lease provides, in effect, that drilling may be delayed by the payment of rental; and since the court could have applied that rule in the case of an ''unless'' lease with just as much consistency as it had applied it in the Monarch case, which involved an ''or'' lease, we agree with counsel that this section was directed at both types of leases. We are unable to follow them, however, in their argument that by virtue of this section an ''unless'' lease must in every instance and under all circumstances be considered as written, and that when so construed the lessor may not forego the forfeiture clause, nor the lessee avail himself of the doctrine of waiver and estoppel. The objection to that construction is two-fold: (1) The two sections are parts of the same Act; each complements the other and each should be read and construed in the light of the other and made to harmonize with it whenever possible. (2) The section itself states that it applies only in the event that, and only so long as, rentals are actually being tendered by the lessee within the due date fixed by the lease, the specific language being that the lease's rental clause ''shall be construed by the courts of this Commonwealth enforcible and binding contracts according to the terms thereof between the parties so long as the rentals therein provided shall be paid or tendered at and as provided by their terms during the period of said lease and contract.'' Clearly the converse of the quoted provision is that this section does not apply in those instances in which the lessee defaults in the payment of rental. To deny this converse is to set the two sections at cross-purposes with each other and to destroy absolutely that portion of section 3766b-4 which provides, in substance, that the forfeiture clause

in the lease may be waived by the lessor's acceptance of past due rentals; whereas to accept the converse is to harmonize the two sections and to give consistency, life and vitality to each of them.

It is quite evident, therefore, that the acceptance of the '42-3 & '43-4 rentals had the effect of avoiding a forfeiture of the lease and of rendering the doctrine of waiver and estoppel available to the appellees unless there is that something in the language or in the nature of the ''write in'' which supersedes the statute, the well settled rule of the court, and the construction which the parties themselves placed upon the writing by their subsequent conduct.

It will be noted that the ''write in'' does not say that if a well is commenced within 60 days the lease will then assume life for the first time; nor does it say that the lease shall be suspended or constitute a mere potentiality during that period. What it says is that the lease shall terminate if a well is not commenced within 60 days. It is elementary that there can be no such thing as a termination of something that does not exist. The very language of the ''write in'' presupposed and acknowledged that the lease was then and for sixty days would remain alive and in force. In fine, the ''write in'' was simply one of the many provisions of the lease. The question posed, therefore, is not whether the ''write in'' was of sufficient clarity and purport to accomplish a forfeiture or termination of the lease if no well should be commenced within 60 days, for that it had that effect must be at once conceded. No, the real question is, did the ''write in'' constitute a provision which the lessor had a right to treat as voidable and to waive? Our answer is that so far as revocability and waiver are concerned we are unable to perceive any difference between a provision that if a well is not commenced or a rental paid within one year the lease is terminated, and a provision that if a well is not commenced within 60 days the lease is terminated. The contingency in the one instance is precisely the same that it is in the other: If the failure to drill within 60 days has the effect of terminating the lease, by a parity of reasoning and on every principle of consistency, failure both in commencement of a well and in payment of rental within one year likewise has the effect of terminating the lease. And

by analogy of reasoning the converse must be true; namely, if the lessor may waive the forfeiture provision in the one instance, he may also waive it in the other. And we hold, therefore, on the principle affirmed by the authorities cited, that the lessor in the present case had the right to treat the "write in" as voidable and to waive it. That he exercised that right is the only interpretation that rationality can place upon his conduct in accepting and retaining rentals under the circumstances that he did.

The question presented by appellant's claim of being bona fide purchasers for a valuable consideration without notice is not regarded as being either serious or difficult. While it is true that under the express provision of the statute the clerk should not have received the "Basin" lease for recordation because it did not give the book, page and number wherein the lessor's title was recorded, yet the fact remains, as shown by the record, that the clerk did receive and record it. The record further shows that the appellants had the title examined before they acquired their lease, and actually found the "Basin" lease to be of record, and in addition to that, they talked with the lessor's son with respect to it. This was sufficient knowledge and notice to impose upon them the duty to make reasonable inquiry, and this they did not do. The record indicates that they made no effort to ascertain whether the holder of the "Basin" lease had paid and the lessor had accepted rentals. Their inquiry was addressed solely to the matter of drilling. Perkins v. J. M. Robinson, Norton & Co., Ky., 124 S. W. 310; Hutcherson v. Louisville & N. R. Co., 247 Ky. 317, 57 S. W. 2d 12.

Judgment affirmed.

Whole Court sitting.

Judge Latimer, dissenting.

The reasoning upon which the above conclusion is based appears to me to be both illogical and illusory. I shall state concisely the reasons which I think justify my position.

There is nothing unusual or particularly striking about the instrument involved until we reach the concluding paragraph, which is a clause written in by longhand, as follows:

"If no well is commenced within 60 days from the date of this lease by the Basin Drilling Company, then this lease shall terminate as to both parties."

The parties to that instrument fixed and determined their rights when they appended their signatures thereto. The positive, unequivocal and unambiguous wording of that clause evidences its inelasticity, inflexibility and decisiveness. Its provisions are inescapable. In a proper disposition of this clause, that clause must be dealt with first. It will be readily seen that it partakes of some of the qualities and characteristics of both a condition precedent and a condition subsequent, yet differs from each in that there is a determinable vested interest of 60 days differentiating it from a condition precedent, and an interest less than the whole distinguishing it from a condition subsequent. There is only potential life, or a potential interest, beyond this determinable interest of 60 days. The parties, in the light of that clause, could not possibly have any illusion of security. There was a positive, definite, certain and explicit obligation to commence a well within 60 days, upon failure of which, fatal consequences would inexorably ensue. That clause is an interdiction. It is a proscription, circumscribing a continuation of the interest and marking the period which is to determine it. The death of the lease could be forfeited only by the commencement of a well. Upon the fulfillment of that condition, the limitation is outgrown and the whole document vitalized. Only by the commencement of a well within the limited period of 60 days is life breathed into the remainder of the lease. Until that happens, and only until then, do the terms preceding that clause become alive and applicable. This clause does not have within it even the substance, or contemplation of postponement of the commencement of a well beyond 60 days by the payment of rent. It is obviously apparent that if that had been in the minds or contemplated by either party, it would have been much easier to emend the third paragraph of the lease by substituting the words 60 days for one year instead of adopting the much more difficult method of writing by longhand the entire clause above. This clause, which has within it the elements of a condition and a limitation, might easily be classified as a conditional limitation. Had the condition been met as was positively, definitely and specifical-

ly provided, then, according to the very nature of a conditional limitation there would have been a lapping over beyond the provisions of that fulfilled condition, and a breathing of life into the remaining provisions of the lease. Since this clause had in it the elements of life or death, and since by failure to meet the condition resulting in fatality to the instrument, and since in consequence of such failure, there is no survival beyond the limit of time placed in that conditional limitation, we never reach the position necessitating all this labyrinth of argument concerning, and attempted reconciliation of, the different portions of the lease, nor of the applicability of the statutes to leases providing in substance for the postponement of the drilling of a well by the payment of rent.

If this, then, is a definite and positive conditional limitation, and I am of the opinion it is, the first lease to the Basin Drilling Company was not in existence when the later lease was executed, and the judgment of the court below should have been reversed.

I am authorized to state that Judge Rees concurs in this dissent.