**H. B. CAMERON et al., Appellants,**

**v.**

**Simon LEBOW et al., Appellees.**

Court of Appeals of Kentucky.

Dec. 14, 1962.

Rehearing Denied April 19, 1963.

Sandidge & Sandidge, Thos. E. Sandidge, Owensboro, for appellants.

William G. Craig, Sandidge, Holbrook, Craig & Hager, Owensboro, for appellees.

MILLIKEN, Judge.

This is the sequel to Cameron v. Lebow (1960), Ky., 338 S.W.2d 399, wherein we reversed a judgment entered on the pleadings under CR 12.03 and concluded that both issues of law and fact were presented which required development "by further pleading and perhaps proof. The complaint invites the issue of abandonment (of a 1939 oil lease), but also contains allegations tending to impair this defense." In the present appeal the trial court had found that the lessees, Cameron, et al., appellants and plaintiffs below, had abandoned their 1939 lease, and that Lebow, et al., appellees and defendants below, holders of a later (1956) lease on the same property, had acquired their lease as bona fide purchasers. It is the appellants' contention that the trial court's finding of facts and conclusions of law are clearly erroneous.

In our previous opinion we pointed out "that a chronic source of difficulty is a finding of an intention to abandon, but this is likewise a question of fact which may be inferred from the acts of the parties" and that "mere lapse of time and nonuser, unaccompanied by any other evidence showing intention, as a general proposition may not of itself be enough to constitute abandonment" yet, "in view of the nature and purpose of an oil and gas lease and the practical necessities for expeditious development, the fact of abandonment may be more readily found than in other legal relationships," citing authorities. With these general criteria to steer by and bearing in mind that the burden of proof is upon the party relying on abandonment, let us see how the evidence here persuades us.

In 1938 a gas and oil lease upon three adjoining tracts of land comprising 160 acres was executed by the owners to A. D. Shaffer who assigned the lease interest in approximately 55 acres which assignment, by mesne conveyances, became the property of the appellants in 1939. In that year the appellants drilled a dry hole on their 55 acres of the leasehold at an expense of about $8,000. Later in 1939 four producing oil wells were drilled on the remaining 105 acres by the holders of the lease interest on that portion and oil in commercial quantities has been produced thereon ever since. On the basis of the terms of the particular lease here involved and after an extensive analysis of decided cases, we concluded in our former opinion, Cameron v. Lebow (1960), Ky., 338 S.W.2d 399, 405, that the production on the 105-acre portion absolved the appellants (Cameron, et al.) from pursuing development on their 55-acre portion unless notice and demand therefor were made upon them by the lessors, and that their failure to pursue development did not constitute a forfeiture of their interest in the circumstances. No such demand was ever made upon them, so the key question remaining is whether the appellants abandoned their interest by not developing it for sixteen years.

Since the intention to abandon must be shown by "clear, unequivocal and decisive evidence" in order for an abandonment to be established, Hoff v. Girdler Corporation (1939), 104 Colo. 56, 88 P.2d 100, it necessarily follows that the attitudes of

the original lessor and his successors in interest as well as the attitude and conduct of the appellants (lessees) concerning their assigned interest in the lease are most relevant. We have said that "abandonment of a mineral lease consists of surrender of the property, coupled with an intention to relinquish the lease and is, in fact, to be determined in each case upon the surrounding facts and circumstances." Browning v. Cavanaugh (1957), Ky., 300 S.W.2d 582.

The trial court concluded that the appellants abandoned their interest "before March 1947," a conclusion with which we cannot agree. It was at this time that the appellant H. B. Cameron had a conversation with Mr. E. W. Richmond, then owner of the lessor interest, about the appellants' failure to drill upon the 55-acre tract and was assured by Mr. Richmond, later confirmed in writing, that the appellants might continue as they had until Mr. Richmond notified them to resume development. For most of the period from the time of the test drill in the fall of 1939 until early 1947 World War II was being waged and Federal controls over oil production were in effect. This situation together with correspondence between H. B. Cameron and his colleagues after the failure of the test drill in 1939 to locate oil on the tract are rather convincing evidence that the appellants had no intention to abandon their lease during that period of time. Is there anything of a convincing nature after 1947 which establishes abandonment?

Since the production on the other 105 acres of the original Shaffer lease kept the appellants' sublease on the remaining 55 acres alive until notice from the owners to drill (Cameron v. Lebow, above), it must be assumed that the appellants have not abandoned their interest unless convincing evidence points otherwise. No offset wells to the 55 acres had been drilled prior to August, 1956, there was apparently no production within a half mile of the 55 acres, no oil was being drained therefrom, and the appellants had operating wells nearby. The

fact that no accounting records pertaining to the 55-acre lease were presented by the appellants does not seem to us to be a matter of any significance because there was nothing to record during the period. Furthermore, the fact that only H. B. Cameron, of all the appellants, was on hand during most of the period, does not impress us as indicating an intention to abandon. H. B. Cameron represented the appellants, developed other oil properties in the neighborhood, and admittedly informed Mr. Hartsough, one of the appellees, in September, 1956, that the appellants owned the lease, had not abandoned it, and impliedly notified Mr. Hartsough that he and the other appellees were trespassing when they drilled on the tract. Although Mr. Cameron had producing wells on another tract a half mile away and possibly did know of appellees' drilling on the 55-acre tract, his aforesaid conversation with appellee Hartsough is the only direct evidence we have of the time appellants first knew appellees were drilling on the 55 acres. Despite this the appellees started another well on the tract in the fall of 1956 and another in the summer of 1957 after the present litigation was begun, making three wells on the tract which produced oil in commercial quantities.

While it is true that the appellees had the title to the lease examined and Mr. Richmond was prevailed upon to give the top or later lease to the appellees because he was assured that the appellants had abandoned their lease in legal effect, the stark facts still were there which would have caused the appellees to alter their course had they not wanted to do otherwise. First, Mr. Richmond told appellees' counsel of the appellants' lease, and, second, the lease was in the chain of title. With the ubiquitous Mr. H. B. Cameron always available, it would have been quite simple for the appellees or their counsel to ascertain whether the appellants still claimed an interest in the property. Instead, it seems to us, they studiously avoided doing so, the type of conduct condemned

in Walter v. Ashland Oil & Refining Company (1945), 300 Ky. 43, 197 S.W.2d 425.

We conclude that in all the circumstances of this case the appellants' lease is still good and that the evidence establishes that they did not abandon it.

The judgment is reversed.

PALMORE, MOREMEN and WILLIAMS, Judges (dissenting).

We believe the chancellor's finding of fact that the first lease was abandoned was supported by substantial evidence and therefore was not "clearly erroneous" under CR 52.01. For that reason we dissent from the majority opinion.