Fred. Aye, Albert Aye, R. S. Martin, R. L. Brown, J. R. Smith, W. H. H. Piper and G. W. Reese *v*. The Philadelphia Company, Appellant.

*Lease—Oil and gas lease—Mines and mining—Forfeiture.*

Where an oil lease provides for the completion of a test well within a certain time, but makes no provision for the contingency of the test well proving dry, there is an implied obligation on the lessee, after having com-

pleted a test well which has proved dry, to proceed further with the exploration and development of the land with reasonable diligence according to the usual course of the business, and a failure to do so amounts to an abandonment which will sustain a re-entry by the lessor. In such a case an unexplained cessation of operations for four years gives rise to a fair presumption of abandonment, and standing alone and admitted would justify the court in declaring an abandonment as a matter of law; but it may be capable of explanation, and the question of abandonment is therefore usually a question for the jury on the evidence of the acts and declarations of the parties.

*Contracts—Construction—Oil and gas leases.*

The rule, that where the parties have expressly agreed on what shall be done there is no room for the implication of anything not so stipulated for, is equally as applicable to oil and gas leases as to any other contracts.

Argued Oct. 9, 1899. Appeal, No. 2, Oct. T., 1899, by defendant, from judgment of C. P. Armstrong Co., June T., 1897, No. 123, on verdict for plaintiffs. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, FELL and BROWN, JJ. Reversed.

Ejectment for land in Kittanning township. Before RAYBURN, P. J.

The plaintiffs claimed under a lease dated July 11, 1887, from Wm. M. Campbell to them, for the exclusive right of drilling and operating for petroleum and gas, 100 acres of land in Armstrong county, the material portions of which lease are as follows:

" The parties of the second part their heirs or assigns to have and to hold the above described premises for and during the term of 20 years from the date hereof, and as much longer as oil or gas is found in paying quantities thereon.

" The said parties of the second part, in consideration of the said grant and demise, agree to give to the party of the first part, the full equal $\frac{1}{8}$ part of all the petroleum obtained or produced on the premises herein leased and to deliver the same in tanks or pipe lines to the credit of the party of the first part. . . .

" The parties of the second part agree to drill a test well in the vicinity of the above described premises, within 6 months from the date hereof, unless prevented by accident, etc., and if oil is found in paying quantities in said test well, the parties of

the second part further agree to complete one well on the above described premises within 6 months from the completion of said well, or within one year from the date hereof or thereafter to pay the party of the first part for such a delay a yearly rental of fifty cents per acre from the time of completing such well on the above described premises payable directly to the party of the first part. And the party of the first part agree to accept such sum as full payment for such delay until a well shall be completed on the above described premises; and a failure to complete such well or make such payment renders this lease null and void, and said parties of the second part upon surrendering, or offering to surrender this lease shall be released and discharged from making said payment or payments, and from all claims or demands for damages arising or growing out of a failure to drill or complete said well or wells, and the said lease shall remain without effect between the parties hereto."

The defendant claims under a lease dated October 2, 1891, for the same land from the said Campbell to Wm. C. Bailey & Company, which contained this provision:

" It is further agreed, by the parties of the second part, that should lease under date of July 5, 1887, taken by Aye Bros. and R. S. Martin as the second part thereto be in full force and effect, then the said parties of the second part hereto agree to release said party of the first part of the demands above described and set forth."

Other facts appear by the opinion of the Supreme Court.

The court gave binding instructions for plaintiffs.

Verdict and judgment for plaintiffs. Defendant appealed.

*Error assigned* was in giving binding instructions for plaintiffs.

*William Scott,* with him *Orr Buffington, John Dalzell* and *George B. Gordon,* for appellant.—The grant of an exclusive right and privilege of digging and boring for gas and oil for a specific term is to be treated as a lease for the production of gas and oil, and is not a sale thereof or of any interest in the land: Duffield v. Hue, 129 Pa. 94; Barnhart v. Lockwood, 152 Pa. 82; Venture Oil Co. v. Fretts, 152 Pa. 451; McNish v. Stone, 152 Pa. 457, note.

Where a right to mine ore or other materials is granted in consideration of a reservation of a part of the product, or at a rental based upon the amount of the product, the law implies a covenant on the part of the grantee to work in a proper manner and with reasonable diligence, so that the grantor may receive the income contemplated when the agreement was made : Watson v. O'Hern, 6 Watts, 362 ; Koch & Balliet's App., 93 Pa. 434 ; Ray v. Nat. Gas Co., 138 Pa. 576 ; McKnight v. Manufacturer's Nat. Gas Co., 146 Pa. 185.

Where an oil or gas lease contains an express provision authorizing forfeiture for inaction, such forfeitures are enforced : Brown v. Vandergrift, 80 Pa. 142 ; Munroe v. Armstrong, 96 Pa. 307 ; Stage v. Boyer, 185 Pa. 560.

The decision of this Court in Venture Oil Co. v. Fretts has been followed by the Supreme Court of West Virginia and by the federal courts of the fourth circuit : Crawford v. Ritchey, 43 W. Va. 252 ; Elk Fork Oil & Gas Co. v. Jennings, 84 Fed. Rep. 839 ; Foster v. Elk Fork Oil & Gas Co., 61 U. S. App. 576.

Under their lease the plaintiffs were to be the actors. It was their duty to operate the land. They have no estate or legal title and are practically seeking to enforce as against the defendant specific performance of Campbell's contracts ; but under all equitable principles they have been guilty of gross laches and are not entitled to recover when there has been a material change of circumstances affecting the rights and obligations of the parties interested : Kreutz v. McKnight, 53 Pa. 319 ; Russell v. Baughman, 94 Pa. 400 ; Callen v. Ferguson, 29 Pa. 247 ; DuBois v. Baum, 46 Pa. 537 ; Miller v. Henlan, 51 Pa. 265.

*M. F. Leason,* with him *W. D. Patton, J. B. Neal* and *John H. Painter,* for appellees.

OPINION BY MR. JUSTICE MITCHELL, November 6, 1899 :

The lease to Aye and Martin being referred to in the lease from Campbell to Bailey, the appellant, as assignee of Bailey, must be held to have taken with notice. The recital of the prior lease, however, was not an affirmance by Campbell of its continuing validity, but a disclaimer by him of responsibility

on that subject. It was a refusal to declare or enforce a forfeiture himself, but a transfer of his right in that regard whatever it might turn out to be, to appellant, which assumed the risk. Its entry and commencement of operations on the land were an enforcement of a forfeiture for abandonment if Campbell had that right. This depends on the circumstances.

By their lease from Campbell the appellees covenanted to complete a test well in the vicinity within six months, and if oil should be found in paying quantities to complete a well on the leased premises within the next six months or pay a yearly rental per acre for the delay. The royalty reserved as rent by the lessor was one eighth of the oil produced. The lease was made July 11, 1887. The test well was put down on a farm in the vicinity, but produced no oil. A second well was drilled on another farm with like result, and operations then ceased without any well on the leased premises. On October 2, 1891, Campbell leased to Bailey and on June 19, 1892, Bailey assigned his lease to the appellant.

The lease from Campbell to appellees, it will be seen, contained express covenants what the lessees should do in a certain event, but made no provision for the contingency of the test well proving dry, which is what actually happened. In such case it becomes necessary to inquire what covenants, if any, are implied.

It was held as far back as Watson v. O'Hern, 6 Watts, 362, that a lease of a stone quarry in consideration that the lessee shall pay a certain price per perch for all stone taken out, though called by the parties a "privilege and liberty," is a contract by the lessee that the quarry shall be worked, and failure to do so is an actionable breach. The rule is thus stated by the present Chief Justice in Koch and Balliet's Appeal, 93 Pa. 434, 442, "Where a right to mine iron ore or other minerals is granted in consideration of the reservation of a certain proportion of the product to the grantor, the law implies a covenant on the part of the grantee to work the mine in a proper manner and with reasonable diligence, so that the grantor may receive the compensation or income which both parties must have had in contemplation when the agreement was entered into." So, in Ray v. Natural Gas Co., 138 Pa. 576, 589, it was said by our late Brother CLARK, "Whilst the obligation on the part of the

lessee to operate is not expressed in so many words, it arises by necessary implication. . . . If a farm is leased for farming purposes, the lessee to deliver to the lessor a share of the crops, in the nature of rent, it would be absurd to say, because there was no express engagement to farm, that the lessee was under no obligation to cultivate the land; an engagement to farm in a proper manner, and to a reasonable extent is necessarily implied." That was the case of an oil and gas lease, and it has been said that the doctrine is peculiarly applicable to such leases, owing to the nature of the product: McKnight v. Manufacturer's Natural Gas Co., 146 Pa. 185; Venture Oil Co. v. Fretts, 152 Pa. 451.

The rule in regard to contracts is that where the parties have expressly agreed on what shall be done there is no room for the implication of anything not so stipulated for, and this rule is equally applicable to oil and gas leases as to other contracts. There is nothing peculiar about them in this respect. But here the parties have provided for a test well, and for what shall be done if it produces oil in paying quantities. But the other contingency, that it prove dry, is not provided for, and it is the omitted case that has occurred. The authorities are uniform that under such circumstances there is an implied obligation on the lessee to proceed with the exploration and development of the land, with reasonable diligence, according to the usual course of the business, and a failure to do so amounts to an abandonment which will sustain a re-entry by the lessor.

Abandonment is a question of fact to be determined by the acts and intentions of the parties. An unexplained cessation of operations for the period involved in this case gives rise to a fair presumption of abandonment, and standing alone and admitted would justify the court in declaring an abandonment as matter of law. But it may be capable of explanation and is therefore usually a question for the jury on the evidence of the acts and declarations of the parties : Stage v. Boyer, 183 Pa. 560. It should have been so left to them in this case.

Judgment reversed and venire de novo awarded.