## Dale v. Smith.

*Lease—Oil lease—Forfeiture—Failure to operate—Rule to bring ejectment—Remedy.*

1. Although an oil lease contains no clause of forfeiture for failure to operate, still, if the lessee fails to operate producing wells on the premises for a period of three years without any excuse for delay, the lessor may declare a forfeiture without previous demand on the lessee to operate.

2. In such a case, the lessor is not limited to *assumpsit* for damages for non-operation. He may rule the lessee to bring an ejectment.

Ejectment. Trial without jury. C. P. Crawford Co., Sept. T., 1920, No. 110.

*Thomas & Thomas*, for plaintiff; *Albert L. Thomas*, for defendant.

PRATHER, P. J., July 5, 1921.—Counsel having filed a stipulation waiving a jury trial, pursuant to the provisions of the Act of April 22, 1874, P. L. 109, and requesting therein that the court frame an issue pursuant to said rule, the following issue is framed:

The question involved is the right of H. L. Dale, lessee, to continue to operate upon the George Smith land, hereinafter described, for oil and gas, and to pump and market such product.

Therefore, an issue is hereby framed in which H. L. Dale is plaintiff and George Smith defendant. If said leases have not been forfeited, then judgment for plaintiff; if forfeited by plaintiff, then judgment for defendant without prejudice to plaintiff's right of entry to pull casing and remove all pumping and operating materials and equipment.

From the testimony offered we find the following facts:

1 D. & C.

### Dale v. Smith.

1. George Smith, the petitioner, being the owner of certain tracts of land, situate in Wayne Township, Crawford County, Penna., fully described in his said petition, executed three several leases granting to the lessees therein named the right to prospect for oil and gas thereon, and market the same, which said leases are attached to the testimony as Exhibits Nos. 1, 2 and 3.

2. Said leases are dated May 26, 1908, May 16, 1899, and Nov. 28, 1910.

3. The lessees therein mentioned, and their assignees, proceeded to drill six wells on said farm, and produced oil in paying quantities up to about Feb. 1, 1918.

4. By purchase and assignments, said leases vested in H. L. Dale, plaintiff, and his brother, Maurice Dale, as equal owners, and so remained until about ————, 1918.

5. In a certain partition proceeding and sale on the —— day of ————, 1918, at ————, Sept. Term, 1918, H. L. Dale became the purchaser and entire owner of the three leases in question.

6. During the year 1917, while defendant was in the employ of the two Dales pumping these wells, H. L. Dale came on the premises and told defendant he could do just as he had a mind to do as to pumping or not pumping these wells.

7. Defendant continued pumping until February, 1918, and then closed them down. The wells have not been pumped since that time, nor at any time since plaintiff became sole owner has there been any operation for oil or gas.

8. This action was instituted Aug. 18, 1920, and the testimony taken Nov. 1, 1920, and the case argued in February, 1921.

9. Defendant sent bills at different times to plaintiff for his services in pumping, but received no answer thereto or pay therefor.

10. The leasehold equipment, consisting of gas engine, casing, pumping equipment, etc., is valued at $3000.

11. The oil produced, when pumped, was run into the pipe-line and credited to the lessor and lessee according to their respective interests therein, the lessor receiving a royalty for his share.

12. Of the said leases each provides: "That the second party (lessee), his heirs or assigns, shall have the right at any time to surrender this lease;" each lease also provides that lessee is to "have the right to remove any machinery, fixtures and buildings placed on said (leased) premises."

### Discussion.

It is to be observed that the leases in question contain no clause of forfeiture for failure to operate. The question then arising is, can such a lease become forfeit by lessees' non-operation for a continuous and indefinite period?

We have a lease with six productive wells connected for pumping, and not an ounce of oil pumped during plaintiff's entire ownership, a period of nearly three years. If three years of total stagnation will not forfeit a lease under these circumstances, how many years will it require?

In Glasgow v. Chartiers Oil Co., 152 Pa. 48, the Supreme Court, discussing the relations arising and the obligations imposed upon the lessee when oil is produced under a lease, said: "If he (the lessee) explores and finds oil or gas, the relation of landlord and tenant or vendor and vendee is established, and the tenant would be under an implied obligation to operate for the common good of both parties and pay the rent or royalty reserved."

In Cole v. Taylor, 8 Pa. Superior Ct. 19, the Superior Court, discussing the same question, said: "Assuming that oil could have been produced in paying quantities, there is the fact that the lessees failed to so produce it for a period

of two years, and by this means deprived the lessors of their rent, which was payable out of the oil produced. It would seem that the failure so to produce for so unreasonable a length of time ought in equity to work a forfeiture of the rights of the lessees."

In Aye *v.* Philadelphia Co., 193 Pa. 451, where an oil lease simply provided for the completion of a test well within a certain time, and the test well proved a dry one, the Supreme Court said:

"The authorities are uniform that under such circumstances there is an implied obligation on the lessee to proceed with the exploration and development of the land with reasonable diligence, according to the usual course of the business, and a failure to do so amounts to an abandonment which will sustain a re-entry by the lessor.

"Abandonment is a question of fact to be determined by the acts and intentions of the parties. An unexplained cessation of operations for the period involved in this case gives rise to a fair presumption of abandonment, and, standing alone and admitted, would justify the court in declaring an abandonment as matter of law. But it may be capable of explanation, and is, therefore, usually a question for the jury on the evidence of the acts and declarations of the parties: Stage *v.* Boyer, 183 Pa. 560."

In Calhoun *v.* Neely, 201 Pa. 97, 101, the Supreme Court said: "A vested title cannot ordinarily be lost by abandonment in a less time than that fixed by the statute of limitations, unless there is satisfactory proof of an intention to abandon. An oil lease stands on quite different ground. The title is inchoate and for purposes of exploration only until oil is found. If it is not found, no estate vests in the lessee, and his title, whatever it is, ends when the unsuccessful search is abandoned. If oil is found, then the right to produce becomes a vested right, and the lessee will be protected in exercising it in accordance with the terms and conditions of his contract."

In the same case the Supreme Court continued: "The suspension of operations, abandonment of the search for oil and gas, and relinquishment of the premises for nine years were an unqualified surrender by the appellants of whatever rights they had to perfect their inchoate title. It was their announcement to the lessor that they were done."

In the case before us we have not a syllable of explanation offered by lessee plaintiff in justification of his conduct. As said in Kreutz *v.* McKnight, 53 Pa. 319: "The infirmity of plaintiff's case is that there was an utter failure to show performance or offer of performance of his covenants."

In that case it is held that: "Lessee being out of possession, he could not recover in ejectment without showing performance or an offer of performance of his covenants."

In Bartley *v.* Phillips, 165 Pa. 325, 328, it appears that operations under an oil lease had ceased for something like two years. The Supreme Court, on the question of abandonment, said: "Abandonment is a mixed question of acts and intention, and, therefore, is ordinarily for the jury, and there is nothing in this case to take it out of the rule, for the abandonment was denied in plaintiff's abstract, and was, therefore, incumbent on defendants to prove before they could avail themselves of it. Whether the evidence on the part of the plaintiffs showed an abandonment by them did not depend exclusively on the length of time that operations had ceased, but also on the intention, and that again was largely dependent on the agreement and understanding of the parties. The plaintiffs denied the intention, and the court, therefore, could not declare the abandonment as a matter of law, but should have left it as a fact to the jury."

1 D. & C.

Dale *v.* Smith.

Abandonment can be taken advantage of by the lessor: **Bartley** *v.* **Phillips,** 165 Pa. 325, 328.

To the same effect is McMillin *v.* Titus, 222 Pa. 500, 511.

It is urged that lessor should have made demand upon lessee to operate so that he could protect himself against a forfeiture of the lease.

The lease does not provide for such notice. Under what authority is a lessor required to act as an intelligence bureau to determine the conduct of a lessee under his written obligation?

It is urged that lessor in some way must declare the lease forfeit before taking any action against the lessee. How is he to declare it? In this case, in the most solemn manner known to the law, he made such declaration in August, 1920, when he entered the rule upon lessee to bring his action in ejectment.

In McKean Nat. Gas Co. *v.* Wolcott, 254 Pa. 323, 326, the Supreme Court said: "If, before the lessor takes action in the matter, the rent so in arrear be paid or tendered, it heals the breach and saves the tenancy. . . . It may be stated as a rule of law that, when a tenant defaults in the payment of rent under a lease giving a right to a landlord to declare it forfeited for this reason, if, before a forfeiture is declared by the landlord, the money or rent due is paid or tendered by the tenant, the right to take advantage of the default as a forfeiture has passed."

The rents in the case under consideration were the royalties payable to lessor—the oil that was to be run in the pipe-line to his credit.

It is quite possible that lessee might at any time prior to the bringing of this action have resumed his exploration for oil and gas, including the general operation of producing and marketing oil under this lease, and have avoided the forfeiture of this lease. By so doing he at least would have a stronger case for the jury on the question of abandonment. He cannot complain if the court and the lessor interpret his conduct as an abandonment.

It is still urged that lessor's action should have been in *assumpsit* for damages for non-operation. It seems clear that lessor might have resorted to such an action, but it does not follow that this remedy is exclusive, nor does it give a defaulting lessee the right to elect the form of action that his lessor shall bring against him.

We fail to see any merit in plaintiff's contention. If a producing lease could not be profitably operated by pumping and marketing the oil when it sold for $6 a barrel, it would be interesting to speculate when it would be likely to reach a point that would justify normal activity.

### Conclusions of law.

1. The leases in question are forfeited, and all rights to operate thereunder, because of the abandonment of all operation for a period of some two and one-half years.

2. Judgment should be entered for defendant and against plaintiff, subject, however, to plaintiff's right to enter upon said leases to remove all materials and equipment used in connection with the drilling and pumping of said wells.

Now, July 5, 1921, the prothonotary is directed to forthwith give notice to the attorneys of record of the filing of this opinion, and that, if no exceptions thereto are filed in the proper office within thirty days after service of such notice, judgment will be entered in accordance therewith.

From Otto Kohler, Meadville, Pa.