ANNA J. COTTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 45005, 51393. Promulgated April 15, 1932.

*M. A. Matlock, Esq.*, for the petitioner.
*Nathan Gammon, Esq.*, for the respondent.

OPINION.

LANSDON: The petitioner contends that changed conditions have accelerated obsolescence and shortened the useful life of her hotel property by one-third. She therefore claims the right to depreciated deductions on such account from net income in each of the taxable years at the rate of 3 per cent on the cost thereof. No evidence has been introduced to show that conditions have permanently changed for the worse in respect to the petitioner's property since it was opened up as a hotel in 1913. That it has not greatly suffered from destructive competition is indicated by the fact that its greatest earnings were in 1920, five years after the building of the Rice Hotel. The evidence also shows that the operation of the Texas State Hotel across the street helped rather than injured its business. The falling off of revenues, of course, is no evidence, *per se*, of a shortening of the property's economic life. The witness, E. C. Cotton, who was petitioner's business manager, testified that in his opinion the hotel business was overdone in Houston. Even if this is true, it would not establish obsolescence or accelerated depreciation of petitioner's properties. In the absence of proof to show that the true economic life of this property is shorter than determined by the respondent, we affirm the respondent's determination on this issue. *Mandel Brothers*, 4 B. T. A. 341; *Potter Farms Co.*, 6 B. T. A. 110; *California Iron Yards Co.*, 15 B. T. A. 25; *Darling-McDuff Coal Co.*, 15 B. T. A. 110.

The petitioner contends that she sustained a business loss in 1927 in the amount of $139,675.38 as a result of expenditures made by her deceased husband and herself in developing a mine which was abandoned in September, 1926. Although the abandonment was in 1926, she contends that, because of a provision in the lease which allowed a six-month suspension of work before subjecting her interests in it to forfeiture, the loss did not occur until after the lapse of that period, which ended in 1927. In this contention she has overlooked the fact that her interests in that property were not terminated by forfeiture, but that she voluntarily abandoned it on September 8, 1926. Her son, who was her manager and in full charge of the work at the mine, when asked the question: "Was it your intention to go back and resume operations later?" answered: "No, I did not go back for it cost too much money to get the equipment." This voluntary abandonment, with the intent indicated, terminated the petitioner's interests in the lease, as and from that date without awaiting further lapse of time or invoking involuntary forfeitures. *United Mining Co.*

v. *Morton*, 174 Ky. 366; 192 S. W. 79; *Grubb* v. *McAfee*, 109 Tex. 527; 212 S. W. 464; *Buffalo Zinc Co.* v. *Crump*, 70 Ark. 525; 69 S. W. 572; *Worrall* v. *Wilson*, 101 Iowa 475; 70 N. W. 619; *Aye* v. *Philadelphia Co.*, 193 Pa. 451; 44 Atl. 555; *Bay State Pet. Co.* v. *Penn Lubricating Co.*, 121 Ky. 639; 87 S. W. 1102; *Wilmore Coal Co.* v. *Brown*, 153 Fed. 143. Inasmuch as the petitioner has failed to establish the loss contended for in 1927, it follows that there was no resulting net loss which she was entitled to carry forward in reduction of her taxes in 1928.

<em>Decision will be entered for the respondent.</em>