**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| SLT HOLDINGS, LLC, JACK E. MCLAUGHLIN, AND ZUREYA MCLAUGHLIN, | : | No. 6 WAP 2020 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Superior Court entered August 23, |
| Appellees | : | 2019, at No. 542 WDA 2018, |
| | : | affirming the order of the Court of |
| | : | Common Pleas of Warren County |
| v. | : | entered March 13, 2018, at No. 626 |
| | : | of 2013. |
| | : | |
| MITCH-WELL ENERGY, INC., AND | : | ARGUED:  October 22, 2020 |
| WILLIAM E. MITCHELL, JR., AN | : | |
| INDIVIDUAL, | : | |
| | : | |
| Appellants | : | |

## OPINION

**JUSTICE MUNDY**                                       **DECIDED:  APRIL 29, 2021**

This case brings into focus the remedies available to, and duties imposed upon, Appellees, SLT Holdings, LLC, and Jack and Zureya McLaughlin, lessors respectively under two oil, gas, and mineral rights leases granted to lessee, Appellant, Mitch-Well Energy, Inc., solely owned by William E. Mitchell, Jr.  We granted review to consider the propriety of the Superior Court's affirmance of the trial court's grant of partial summary judgment in favor of Appellees in their complaint in equity against Appellant on the grounds of abandonment.  Because Appellees had available to them a full and adequate remedy at law, through contract principles generally applicable to oil and gas leases, and through the specific provisions of the subject leases, we conclude it was error to provide recourse through application of the equitable doctrine of abandonment.

Eleanor McLaughlin acquired all oil, gas, and mineral rights underlying two parcels in Watson Township, Warren County, Pennsylvania.[1] One parcel, consisting of 350.51 acres, is identified for tax purposes as Lot 769, and the other, consisting of 1,112.1 acres, is identified as Warrant 3010. In 1985, Eleanor leased the oil and gas rights for each parcel to United Land Services. The written lease agreements, in pertinent part, contained identical provisions.

> 2) Term of Lease - Subject to the other provisions herein contained, this lease shall be in force for a primary term of five (5) years from the effective date of this lease, and for as long thereafter as oil or gas or other substances covered hereby are or can be produced in paying quantities, as determined exclusively by the Lessee, from the leased premises . . . or this lease is otherwise maintained pursuant to the provisions hereof.
>
> . . .
>
> 5) Rental Payment - This Lease is made on the condition that it will become null and void and all rights hereunder shall cease and terminate unless work for the drilling of a well is commenced on the leased premises . . . within ninety (90) days and prosecuted with due and reasonable diligence, or unless the Lessee shall pay to the Lessor, in advance, every twelve (12) months until work for the drilling of a well is commenced, the sum of Twelve Dollars ($12.00) per acre, that is [] ($3,600.00) for each 12 months during which the commencing of such work is delayed.
>
> 6) Continuing Operations - If, at the end of the primary term or any time thereafter, this lease is not being kept in force by any other provision hereof, but Lessee is then engaged in drilling, reworking or any other operation calculated to obtain production on the leased premises or lands pooled therewith, this lease shall remain in force as long as . . . such operations are conducted in a reasonable, prudent manner and, if such

---

[1] Eleanor acquired title though a series of Treasure's Deed Poles, transfer deed, survivorship, and a quiet title action, concluding by September 1985, prior to her execution of the subject leases. The surface rights are owned by the United States Forest Service and/or the Pennsylvania Game Commission.

operations result in production of oil or gas or other substance covered thereby, as long thereafter as production continues in paying quantities.

. . .

8)      Shut-In Gas Royalty - Notwithstanding anything herein to the contrary, if all wells . . . are capable of producing gas in paying quantities but the wells are shut-in, such wells shall nevertheless be considered as though the wells are producing gas in paying quantities for the purpose of maintaining this lease in effect by Lessee on or before the end of each calendar year in which the wells are shut-in, pay Lessor a shut-in gas royalty equal to the delay rental provided for herein . . . .

. . .

12)      Default and Election of Remedies - In the event of a default, Lessor agrees to notify Lessee in writing as to the nature of the default and Lessee shall have thirty (30) days . . . to cure such default.  Lessor agrees that its exclusive remedy shall be to terminate this lease in the event a court . . . determines that the default has not been cured . . . .

. . .

17)      Lessee agrees to drill and, if, in the sole opinion of Lessee it is warranted, complete one (1) well during the first year of this lease . . . , and to drill five (5) additional wells each year thereafter until a total of 203 wells have been drilled. . . . In the event Lessee fails to fulfill its drilling commitment, as set forth herein, this lease will terminate with the exception that the Lessee shall retain twenty (20) acres surrounding each well drilled . . . and which is capable of producing oil and/or gas . . . .

18)      There will be a minimum payment of $5.00 per acre per twelve months if the . . . royalty payment does not exceed $5.00 per acre payment per twelve months.

SLT Lease, ¶¶ 2, 5, 6, 8, 12, 17, 18.[2]

---

[2] The McLaughlin Lease was identical except that under paragraph 2) the $5.00 per acre amounted to $4,950.00 for 12 months; and under Paragraph 18 the minimum payment was $12.00 per acre per twelve months.  McLaughlin Lease ¶¶ 2, 18.

United Land Services in turn assigned the leases to Appellant, Mitch-Well Energy, Inc.[3] In 2008, Jack and Zureya McLaughlin sold their interest in the Warrant 3010 to Sheffield Land and Timber Company, which merged into Appellee SLT in 2012. During the initial term of the leases, Mitch-Well drilled one well on each lease parcel and produced oil in paying quantities until 1996. Mitch-Well did not drill any additional wells. After 1996, no oil was produced or royalty payments, or delay rental payments made or tendered until 2013. Nor did Mitch-Well tender any paragraph 18 minimum payments during that period under either lease.

On November 19, 2013, Appellees filed a complaint in equity claiming Appellant abandoned the described leases, and an amended complaint on June 14, 2015. Therein, Appellees sought injunctive relief (Count I), declaratory judgment (Count II), an accounting (Count III), ejectment (Count IV), damages for conversion (Count V) and damages for tortious interference with contract (Count VI).[4] Appellant filed an answer to

---

[3] In 1991, Eleanor transferred her interest in both parcels to Appellee Jack McLaughlin. Subsequently, Jack and Zureya married. Appellant, William E. Mitchell, Jr. is the sole owner and operator of Mitch-Well Energy Inc.

[4]Although Appellees identified their complaint as one in equity, the Rules of Civil Procedure eliminate the pleading distinctions within the consolidated "civil action." However, this does not alter the distinctions in entitlement to relief.

> The separate action in equity has been abolished and the rules governing the civil action have been amended to include equitable relief. The consolidated civil action allows the court in a "unified judicial system" to grant the relief to which the parties are entitled, whether legal or equitable.
>
> The amendments address the concept of form of action, not cause of action. In merging the action in equity into the civil action, the action in equity as a separate form of action has been abolished but the cause of action in equity remains. The amendments have no effect upon a party's entitlement to equitable relief. Stated another way, a court may grant equitable relief only if a party is entitled to such relief as a matter of law.

the amended complaint on December 11, 2015.  On July 26, 2017, Appellees filed a motion for partial summary judgment on Counts I, II, and V.  The trial court granted the motion on January 8, 2018.[5]

On appeal, the Superior Court affirmed, citing extensively the reasoning of the trial court.  Appellant argued before the Superior Court that there were disputed issues of material fact that precluded the grant of summary judgment in this case.  Appellant also argued that even if it were in breach of certain aspects of the lease agreements, paragraph 12 of those agreements provided for notice and opportunity to cure, which Appellees had never triggered.  Appellant's Brief at 7-8.  Appellant also argued the terms of the leases set forth the remedy in the event of an uncured breach pursuant to which Appellant would retain interest in certain acreage around its completed wells.  Appellees argued that Appellant's inaction was undisputed and squared precisely with the facts found by courts in a number of cases holding a lessee had abandoned its rights under an oil and gas lease.

We granted allowance of appeal to address the following issue:

> Did the Superior Court err in the grant of summary judgment against Petitioner of Counts I, II, and V of its amended complaint in equity of "drill or pay oil and gas lease" where a well on each parcel was drilled by [Appellant] and pursuant to each lease the wells were productive, and no testimony was taken as to [Appellant's] good faith production decision pursuant to the Supreme Court decision in the case of *T.W. Phillips Gas and Oil Co. v. Jedlicka*, 42 A.3d 261 (Pa. 2012)?

*SLT Holdings, LLC v. Mitch-Well Energy, Inc.*, 229 A.3d 570 (per curiam).  We also directed the parties to "address *Jacobs v. CNG Transmission Corp.*, 332 F. Supp. 2d 759

---

Pa.R.C.P., Equitable Relief- Explanatory Cmt.-2003.

[5]  Counts III, IV and VI were withdrawn by Appellees without prejudice with permission of the trial court.

[J-92-2020] - 5

(W.D. Pa. 2004), *Aye v. Philadelphia Co.*, 193 Pa. 451 (Pa. 1899), and the doctrine of abandonment." *Id.* "In reviewing a grant of summary judgment, this Court's standard of review is de novo and our scope of review is plenary." *Bourgeois v. Snow Time, Inc.*, 2020 WL 7237271, at *8 (Pa. 2020).

Appellant argues that the Superior Court's analysis is flawed in two main respects. First, Appellant argues the trial court and the Superior Court failed to give effect to the express terms of the lease agreements, despite acknowledging that such a lease is "in the nature of a contract and is controlled by principles of contract law. It must be construed in accordance with the terms of the agreement as manifestly expressed, and '[t]he accepted and plain meaning of the language used, rather than the silent intentions of the contracting parties, determines the construction to be given the agreement.'" *SLT Holdings, LLC v. Mitch-Well Energy, Inc.*, 217 A.3d 1258, 1263 (Pa. Super. 2019), *quoting T.W. Phillips Gas & Oil Co. v. Jedlicka*, 42 A.3d 261, 267 (Pa. 2012). Specifically, *inter alia*, the instant leases contain a requirement for the lessor to notify the lessee of any default for which 30 days are afforded to cure. Appellant's Brief at 35 (citing SLT Lease at ¶ 12). It further states the "exclusive remedy" is termination of the lease upon a court determination that a default has not been timely cured. *Id.* As Appellant notes: "[s]imply put, that never happened." *Id.* Second, Appellant argues that even under the doctrine of abandonment, the question of its intent occasioning its alleged inactivity under the lease involves a question of fact for which summary judgment is inappropriate in this case.

Appellees argue that the trial court correctly applied the facts of this case to the elements required to establish abandonment as set forth by this Court in *Aye*. Appellees acknowledge that the *Aye* Court held the oil and gas leases were contracts enforceable by the terms expressly agreed. Appellees' Brief at 8 (quoting *Aye*, 44 A. at 556). The *Aye* Court further held that absent express language imposing a different standard, a

provision establishing a period for exploration carries an implied duty to proceed with reasonable diligence. Appellees interpret *Aye* as holding that when that duty of reasonable diligence is not met for an extended time, it creates a presumption of abandonment by the lessee. *Id.* at 8-9. Appellees contend the facts in *Aye* are indistinguishable from those in the instant case, in that there was a brief period of drilling followed by years of inactivity. Appellees note that the instant leases also contained a requirement for lessee to make payments in lieu of royalty payments during periods of non-production. As Appellant failed to make these payments, Appellees argue the lower courts correctly found that Appellant offered no explanation for cessation of production or non-payment, justifying the grant of summary judgment for Counts I, II, and V.

Next, Appellees argue that the lower courts' decision in this case is supported by *Jacobs*. Like *Aye*, the district court in *Jacobs* noted that oil and gas leases are interpreted under contract principles. *Jacobs*, 332 F. Supp. 2d at 772. The lessor in *Jacobs* argued that the parties' lease required exploration and reasonable development of the properties after the primary term. The lessee's total failure to do so constituted a breach and termination of the lease, or in the alternative, abandonment and forfeiture of the lease.[6] The purpose of oil and gas leases is to generate production and royalties to the mutual benefit of the parties. *Id.* at 765. The court rejected the lessee's interpretation that its rights under the lease continued beyond the primary term in the absence of any activity or due diligence. To hold otherwise, the court said "would similarly convert an expressed form of delay rentals into adequate consideration for the outright purchase of a fee simple determinable interest in the oil and gas under the property without the payment of any

---

[6] *Jacobs* involved an additional issue concerning whether a breach of the duty to develop should also result in termination of separate natural gas storage rights granted by lessor, when lessee had maintained the required storage rentals. Conversely, lessee's compliance with its obligations concerning gas storage did not preserve its unexercised drilling rights. The court held the provisions were severable and the lease with respect to the storage rights remained in effect. *Jacobs*, 332 F. Supp. 2d, at 794.

royalties." *Id.* at 792. While determining the case as a breach of contract, the court addressed lessor's alternative claim of abandonment, opining that even if the contract terms did not provide a remedy, the undisputed facts met the requirements to prove abandonment, citing *Aye*. Appellees refute Appellant's attempt to distinguish *Jacobs* on the basis that the lessee in *Jacobs* had not engaged in any drilling during the primary term. Appellees argue the lack of reasonable diligence or explained inaction applies equally in either scenario. Appellees then recount the facts found by the trial court in the instant matter that support its finding of abandonment. Specifically, the court found Appellant's lack of further drilling, its cessation of production for 16 years from the single wells it did drill on each lot, its failure to make required payments in lieu of royalties, its removal of equipment, and its closing of the business's bank account all raised a presumption of abandonment. Appellees' Brief at 14-17.

Next Appellees address this Court's decision in *Jedlicka*, contending it does not control because the issue addressed therein involved interpretation of a provision referencing "in paying quantities" in the absence of a definition in the lease. Construing the term, we held:

> if a well consistently pays a profit, however small, over operating expenses, it will be deemed to have produced in paying quantities. Where, however, production on a well has been marginal or sporadic, such that, over some period, the well's profits do not exceed its operating expenses, a determination of whether the well has produced in paying quantities requires consideration of the operator's good faith judgment in maintaining operation of the well. In assessing whether an operator has exercised his judgment in good faith in this regard, a court must consider the reasonableness of the time period during which the operator has continued his operation of the well in an effort to reestablish the well's profitability.

*Jedlicka*, 42 A.3d at 276. Appellees contend, the term "in paying quantities" does not pertain in this case because the leases provided for a minimum liquidated payment if the

wells were not in production. Appellees' Brief at 19. Appellant failed to tender this payment.

Appellees contend that Appellant's argument that Appellees failed to provide required notice and opportunity to cure as directed in the terms of the leases is inapplicable to a finding of abandonment. Nevertheless, Appellees argue the leases do not dictate the form of notice or that notice must precede filing suit. They argue that their filing of the complaint in equity and their earlier filing of Affidavits of Non-Production in 2005 with the Warren County Recorder of Deeds should be deemed to equal such notice to Appellant. *Id.* at 25-26.

Appellees maintain the issue of whether Appellant retained acreage surrounding the existing wells is not before us. They note the trial court, in light of its determination that Appellant had abandoned the leases, held the retention provisions were nullities. It did not engage in any interpretation of the provision.

Finally, Appellees argue the record supports the lower courts' holding that no material issues of fact exist placing the issue of abandonment in doubt. Further, Appellant's own testimony supported those conclusions and as Appellant was not the moving party, trial court's reliance on that testimony did not run afoul of the rule in *Borough of Nanty-Glo v. American Surety Co. of New York*, 163 A. 523 (Pa. 1932) (holding that it is improper to enter summary judgment based solely on the movant's own testimony).[7]

---

[7] The Pennsylvania Independent Oil & Gas Association, representing interests of producers, filed an amicus brief and reply brief emphasizing that producers rely on the enforcement of term they negotiate with land owners. Amicus argues the lower courts erroneously bypassed the express terms of the leases at issue in this case, which they note addressed the circumstances that could serve to terminate the leases and the procedures to assert them. Instead, the trial court entertained Appellees' claim of abandonment without giving effect to those express terms.

Analysis of the trial court and the Superior Court opinions in this case reveals an essential initial step was skipped to determine whether the case properly sounded in equity as to be resolvable employing the equitable doctrine of abandonment.[8] "Injunctive relief will lie where there is no adequate remedy at law." *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1286 (Pa. 1992). "It has been repeatedly stated by both the Supreme Court and this Court that equity has jurisdiction only in the absence of a full, complete and adequate remedy at law." *St. Joe Minerals Corp. v. Goddard*, 324 A.2d 800, 802 (Pa. Cmwlth. 1974); *see also Sexton v. Stine*, 319 A.2d 666 (Pa. 1974) (holding where "an adequate legal remedy exists [a] case does not lie in equity"); *Merrick v. Jennings*, 288 A.2d 523 (Pa. 1972) (same). Absent from the analysis of the trial court or the Superior Court is any inquiry as to whether Appellees demonstrated that their remedy under a breach of contract action is inadequate. Significantly, although relying on this Court's application of the equitable doctrine of abandonment in *Aye*, the lower courts fail to note that we premised that analysis on an inadequate remedy under the terms of the lease.

In *Aye*, this Court reviewed the trial court's grant of a judgment in ejectment in favor of the plaintiff, who was a lessee under an oil and gas lease for the subject parcel dated in 1887, and against the defendant, who entered the land as a lessee and drilled a well pursuant to an oil and gas lease dated 1891. The 1891 lease mentioned the earlier lease, which was unrecorded, without affirming its continued validity. At trial, the defendant argued the plaintiff had abandoned its lease. Having drilled two dry test wells during the initial term of the lease the plaintiff had pursued no further activity. The Court noted "[t]he

---

[8] In fact, Appellees alleged in their motion for partial summary judgment Appellant admitted it breached material terms of the lease for nearly 20 years, for which Appellees sought a finding that their rights "**terminated** or otherwise lapsed" as a matter of law. Partial Summ. J. Mot., ¶¶ 29-31 (emphasis added). Appellees' Motion for Summary Judgment referenced precedent applying the doctrine of abandonment as also applicable, but did not distinguish among the remedies sought.

rule in regard to contracts is that, where the parties have expressly agreed on what shall be done, there is no room for the implication of anything not so stipulated for, and this rule is equally applicable to oil and gas leases as to other contracts." *Aye*, 44 A. at 556. However, the Court noted that while the lease provided terms for the drilling of a producing well, it contained no terms for consequences resulting from the drilling of dry wells. *Id.* It was this lack that led to the Court's consideration of the issue of abandonment. The Court went on to hold that, while unexplained cessation of operations for an extended period raised a "fair presumption of abandonment," it also raised questions of possible explanation, which was properly left to the jury to resolve. *Id.*

When applicable, abandonment is the result of intention of the challenged party, not that party's non-performance. "The essential element that distinguishes abandonment from other grounds for divesting the rights of the holder of an oil and gas lease . . . is the intention of the holder to give up the lease. If he did not so intend, the case is not one of abandonment, however remise [sic] he may have been in his obligations[.]" *Girolami v. Peoples Nat. Gas Co.*, 76 A.2d 375, 377 (Pa. 1950). Non-performance is relevant to a finding of abandonment only as far it informs the existence of such intention.

We disagree with the lower courts' reliance on *Jacobs* to support their judgments. As noted by Appellant, the case is not binding upon this Court, but, in any event, we do not view its analysis as consistent with the trial court's ruling in the instant case. The *Jacobs* court offered its abandonment analysis as an alternative to its contract analysis. It resolved the case on an interpretation of the language of the lease itself, applying established rules of construction and contract law. The court held the defendant's interpretation of the meaning of the lease, which contained a drilling/producing component and natural gas storage component, as non-severable such that compliance

with one component precluded termination of the alleged breached component was incorrect. Having resolved the case on these principles, it noted as an alternative, that even if the lease was ambiguous so as to preclude a clear remedy thereunder, the facts of the case would support a finding of the intention to abandon. *Jacobs*, 332 F. Supp. 2d at 792 ("While the [contractual] analysis sufficiently supports the relief plaintiffs request, their contentions concerning the [equitable] doctrine of abandonment also have merit.") This alternative analysis is dicta and, as stated by the *Jacobs* Court, applicable only if the terms of the lease did not provide a remedy at law. *Id.* (citing *Aye*). Instantly, no explanation is advanced by the lower courts to suggest the leases in this case are unclear or incomplete in their identification of duties and obligations of the parties or the remedies prescribed.

Appellees' argument conflates its allegations of Appellant's breach of various terms of the lease with factors relevant to support a finding of an intention to abandon its property rights under the lease. There may indeed be overlap, but there must be a determination of the inadequacy of a remedy at law before equitable relief under the doctrine of abandonment is an issue. Appellees never explain why their bargained for remedy of termination under Paragraph 12 of the lease is unavailable or inadequate. Neither did the trial court or Superior Court provide such explanation.

Whether Appellees complied with the notice requirements of Paragraph 12 was not directly addressed by the lower courts, given the nature of Appellees' complaint seeking equitable relief. Appellees now argue that their complaint should be deemed such a notice. Implicitly, this argument must acknowledge that the proper cause of action here is one for breach of contract in as much as notice is not a prerequisite to an abandonment analysis. We question whether a complaint alleging abandonment is a notice of "the nature of the default" as a breach of contract, however we leave that

question for the trial court to consider in the first instance.[9]  Nevertheless, it is clear that Appellees' allegations of non-payment of royalties or minimum payment for 16 years also reveal a failure of Appellees to seek redress under the leases for the same period of time. By pursuing an equitable remedy, Appellees effectively attempt to bypass the notice requirement and avoid any statute of limitations attendant with such delay.[10]

Appellees' insistence that *Jedlicka* does not support Appellant's position again demonstrates their conflation of the issues in this case.  Appellees argue that the central issue in *Jedlicka* involved an interpretation of the term "in paying quantities" as typically used in the habendum clauses of oil and gas leases and the test for evaluating when production so qualifies.   Thus, Appellees insist the Superior Court was correct to distinguish that case.  The relevance of *Jedlicka*, in common with all the cases cited by the parties and the courts below, is their recognition that oil and gas leases are contracts enforceable by their terms.   *Jedlicka*, 42 A.2d at 267.   This includes the issue of reasonable diligence.   While *Aye*, *Jedlicka*, and *Jacobs* hold that elements of

---

[9] The Dissent would extend this Court's review to resolve the breach of contract claim. In this regard, our comments on notice and timeliness are intended to highlight the practical issues that are neglected when a contractual analysis is erroneously bypassed through application of an equitable doctrine. These comments are not intended to resolve such issues at this stage.  It is not "parsimonious" for this Court to refrain from assuming the role of our trial courts to perform fact-finding and analysis of the parties' submissions in the first instance.  Nor is it "holistic" to impose a view as to whether the facts support a particular finding or conclusion the trial court did not address.  *See e.g. Rufo v. Board of License and Inspection Review* 192 A.3d 1113, 1123 (Pa. 2018) (declining to review issues preserved below but not addressed by the trial court and remanding for their resolution).

[10] Even if equitable relief was facially available to Appellees in this case, given their own years of inaction their right to an award could be problematic. "The application of the equitable doctrine of laches does not depend upon the fact that a certain definite time has elapsed since the cause of action accrued, but whether, under the circumstances of the particular case, the complaining party is guilty of want of due diligence in failing to institute his action to another's prejudice." *Wilson v. King of Prussia Enterprises, Inc.*, 221 A.2d 123, 126, (Pa. 1966) (affirming the denial of plaintiff's claim for equitable relief due to laches, but remanding for further proceedings on plaintiff's breach of contract claim).

reasonableness will be supplied to the duties of a lessee absent specific contrary terms, we have long noted "[h]ad there been nothing said in the contract on the [optimal levels of oil and gas production], there would of course have arisen an implication that the property should be developed reasonably. . . . But that doctrine has no application in a case when the parties have expressly agreed[.]" *Stoddard v. Emery*, 128 Pa. 436, 442 (Pa. 1889).

The subject leases contain such express specific terms in paragraphs 2, where it places determination the continuation of the leases for so long as production is in "paying quantities" "exclusively" with the opinion of Appellee, and 17, where it places the decision of whether drilling additional wells is warranted to the sole opinion of Appellant. Additionally, paragraph 12 of each lease provides for notice and opportunity to cure if a breach of its terms is alleged, and further establishes that the "exclusive" remedy is termination if a court holds the breach remains uncured. Further, paragraph 17 provides for retention of rights to certain acreage if termination occurred for failure to proceed with the drilling schedule therein outlined. There is no silence or ambiguity in the leases relative to the areas of compliance at issue in this case or to the contractual remedies at law available. It was incumbent upon the trial court to address Appellees motion for summary judgment to determine if an adequate remedy at law existed through a contract analysis of the specific provisions of the leases in question, including the obligation for Appellees to provide notice of default and opportunity to cure, the prescribed exclusive remedy for breach, and any retained rights Appellant may have in the event of termination. Accordingly, we conclude the Superior Court erred in affirming the trial court's grant of summary judgment on the basis of its application of the doctrine of abandonment. The judgment of the Superior Court is reversed and the matter remanded for further proceedings consistent with this opinion.

Chief Justice Baer and Justices Saylor, Todd, Donohue and Dougherty join the opinion.

Justice Wecht files a concurring and dissenting opinion.